Hull, Adm'r, vs. The Northwestern Mutual Life Insurance Company.

Life Insurance. *Construction of policy: Forfeiture clause: Premium notes: Application of dividends.*

1. A policy of life insurance recites that in consideration of the annual premium therein stipulated, consisting of an annual cash premium, and an annual loan note, with interest, to be paid and given during ten years next after the date of the policy, the company assured the life of plaintiff's intestate to a certain amount for the term of his natural life. It declares that at each distribution of the surplus after its date, a due proportion of such surplus on each year's business during the continuance of the policy, will be returned to the assured, and that if default shall be made in the payment of any premium, the company will pay as many tenth parts of the original sum assured as there shall have been complete annual premiums paid at the time of such default; but that in order to secure such proportion, "all premium notes must be taken up,

Hull, Adm'r, vs. The Northwestern Mutual Life Insurance Company.

*or the interest thereon be paid annually in cash,* on the date of the annual maturity of the premium or within three months thereafter, until the notes are cancelled by returns of the surplus, *or the whole policy will be forfeited, unless one or more annual payments have been made in full, by cash payment or by application of the dividend."* One of the conditions of the policy was, that if the premiums, *or the interest upon any note given therefor,* should not be paid on the day named for their payment, "the company should not be liable for the payment of the whole sum assured, *but only upon such part thereof as is stipulated above,"* and the *remainder* should cease and determine. There was indorsed on the policy this statement: "At the third annual renewal, the dividend of the first year will be due, and *on the cash policies* can be applied *as cash* towards the payment of the third year's premium, * * *and on note policies will be applied first to pay the unpaid interest* on the loan notes, and then to the notes themselves. * * THIS POLICY IS NONFORFEITABLE. Each complete yearly payment secures its proportion of the policy." The loan note contains a promise by the assured to pay the amount therein named with interest, *"which interest shall be paid annually or the policy be forfeited."* The assured paid the cash premiums for three years, and gave in each of said years his annual loan note as required; but afterwards made default in a payment due September 29, 1873, by reason of which the policy is admitted to have lapsed as to seven-tenths of its amount. On the 29th of March, 1874, there was due the company as interest on outstanding loan notes $24.80; but on the same day there was due the assured from the company $51.15, dividend earned for the year 1872. The assured died December 14, 1874. *Held,* that the company is liable to pay to the administrator three-tenths of the amount insured.

2. Forfeitures are only enforced when it appears that this is the plain intent and meaning of the contract; and the words of a policy must be construed most strongly against the insurer; and if the policy contains repugnant conditions, the court must enforce those which are in favor of the assured and will prevent a forfeiture.

3. By the terms of the policy, the assured was clearly entitled to have the dividend which fell due on the day when interest accrued on his loan note, applied first to the payment of such interest; and even if a forfeiture would have resulted on the failure to pay such interest (a point not decided), there was none in this case.

4. Dividends due the insured are *cash,* and there is nothing in the policy which justifies the company in refusing to apply them in payment of interest on premium notes in such cases.

APPEAL from the Circuit Court for *Fond du Lac* County.

Hull, Adm'r, vs. The Northwestern Mutual Life Insurance Company.

Action upon a policy of life insurance, issued to plaintiff's intestate, Alfred Hull. The terms and conditions of the policy, so far as they have any bearing upon the case, are stated at length in the opinion of the court.

The policy was issued March 29, 1870, upon the ten-year-payment plan, premiums payable annually (subsequently changed to semi-annually), partly in cash and partly by premium note. It was claimed on the part of the defense, that the policy had lapsed as to seven-tenths by the nonpayment of the semi-annual premium due September 29, 1873; and that the balance was forfeited by nonpayment of the interest maturing March 29, 1874, upon the first loan or premium note. The company, after the default in paying the semi-annual premium due in September, 1873, indorsed a dividend, declared upon the earnings of the year 1872, on the note of the assured, but erased the indorsement upon his failing (as the company claims) to pay in cash the interest upon such note maturing in March, 1874.

All the remaining facts, material to the case, will be found in the opinion.

Judgment for the plaintiff for the sum of $1,216.75, being three-tenths of the policy, less the amount of the unpaid loan notes. The defendant appealed.

*Geo. H. Noyes,* for appellant, upon the point that a failure to pay the premium, in accordance with the terms of the policy, worked a forfeiture thereof, where the policy so provided, and that the same result followed a nonpayment of a premium note or the interest or an installment due thereon, cited *Howell v. Life Ins. Co.*, 44 N. Y., 276; *Ruse v. Life Ins. Co.*, 23 id., 506; *Mut. Ben. Life Ins. Co. v. Ruse,* 8 Ga., 534; *Shaw v. Life Ins. Co.*, 103 Mass., 254; *Catoir v. Life Ins. & Trust Co.*, 4 Vroom, 487; *Tait v. Life Ins. Co.*, 2 Ins. L. J., 863; *Robert v. Life Ins. Co.*, 1 Disney, 355; 2 id., 106; *Pitt v. Life Ins. Co.*, 100 Mass., 500; *Baker v. Life Ins. Co.*, 43 N. Y., 283; *Russum v. Life Ins. Co.*, Sup. Ct.

Mo., decided Feb. 15, 1876; *Patch v. Life Ins. Co.*, 44 Vt., 481; *Mut. Ben. Life Ins. Co. v. French*, 2 Cin. Sup. Ct. R., 321; 2 Cent. L. J., 618; *Mut. Life Ins. Co. v. Young*, 11 Alb. L. J., 364; *Worthington v. Life Ins. Co.*, 4 Ins. L. J., 269; *Dillard v. Life Ins. Co.*, 44 Ga., 119. He further argued that, by the terms of the policy, the assured, in order to secure a proportional payment upon it when partially lapsed, was required either to take up all the premium notes, or pay the interest *in cash*, and that a payment by application of dividends would not answer, as the two methods of payment were clearly distinguished by the terms of the policy; that the assured could not claim such application in this case, because, by the terms of the policy, to entitle him to any dividend, there must have been a policy in force when it became due him, and, his policy having lapsed, no dividend had accrued, and none could accrue until payment of the interest; that the uniform rule and practice of the company had been, in case of lapsed policies, where notes were outstanding, to require the interest to be paid in cash, and to apply the dividends uniformly to the payment of the principal of the notes; that the provision indorsed on the policy, that " at the third annual renewal, the dividend of the first year will be due, and on note policies will be applied first to pay the unpaid interest on loan notes, and then to the notes themselves," was obviously restricted to full policies, and had no reference to those partially lapsed; and that any other construction would defeat the theory upon which the entire system of extending credit by insurance companies for a portion of the premium is based, and would render the notes wholly worthless, and require the company to carry a risk for which it received no compensation.

*D. Babcock*, for respondent, contended that a complete annual premium consisted of the cash paid and note given each year; and that, three such payments having been made, the policy, as to three-tenths thereof, was nonforfeitable (Bliss

on Life Ins., 273, 284; May on Ins., § 345; *New England Mut. Life Ins. Co. v. Hasbrook*, 32 Ind.; 447; *McAllister v. Ins. Co.*, 101 Mass., 558; *Mowry v. Ins. Co.*, 9 R. I., 346; *Baker v. Life Ins. Co.*, 6 Abb., N. S., 144; *Dutcher's case*, 2 Cent. L. J., 153; *Hodsdon' v. Guardian Life*, 1 Big. L. & A. Ins. R., 218; 4 id., 670); that the condition as to the payment of interest in cash· was fulfilled when the company indorsed the dividend upon the note; that, as the assured was a member of the company, it was bound so to apply the dividend as to protect his interest from forfeiture, and that courts look upon forfeitures with disfavor (*Fræhlich v. Life Ins. Co.*, 2 Big., 81; *Mut. Ben. Life Ins. Co. v. French*, 4 id., 369; *Ohde's case*, 2 Cent. L. J., No. 36, Sept. 3, 1875; *Grigsby's case*, id., Feb. 19, 1875; Story's Eq. Jur., §§ 1314, 1316); that the company was estopped from claiming that the policy was forfeited for nonpayment of the interest, on the ground that, by its own express agreement, the loan notes were only to be paid by the dividends or by deduction from the policy when it matured (*Dutcher v. Life Ins. Co.*, 4 Big., 665; *Grigsby v. Life Ins. Co.*, 2 Cent. L. J., No. 8, p. 123; 4 Big., 633; *Smith v. Life Ins. Co.*, Sup. Ct. of N. Y., unreported; *Ohde's case, supra*); and that that construction should be adopted which is most favorable to the insured, where there is any uncertainty, and strictly against the insurer.   Bliss on Ins., 656.

COLE, J.   The company defends upon the ground that in consequence of the nonpayment of the interest due on the notes given by the insured for premiums, the policy became forfeited.   The action was to recover three-tenths of the sum named in the policy, less the amount of the outstanding loan notes.   The policy was on the ten-year-payment plan, and bore date March 29, 1870.   The insured paid the stipulated part of the cash premiums for the years 1870, 1871 and 1872, and gave in each of said years his annual loan note, as pro-

vided by the terms of the policy. On the 29th day of March, 1873, when the time for the fourth annual renewal came, the payment of the premium was changed from annual to semi-annual payments; and it was admitted that on the 29th of September, 1873, the policy lapsed as to seven-tenths by reason of the default in the payment of the premium then due. There is a little obscurity in the evidence upon the point, but the fact is conceded that on the 29th day of March, 1874, there was due the company as interest on the outstanding loan notes, the sum of $24.80. On that day there was due the insured from the company the sum of $51.15, dividend earned on the policy for the year 1872. The insured died on the 14th of December, 1874. The real question presented for consideration is: Did the policy lapse and become forfeited as to the three-tenths of the original amount by reason of the failure of the insured to pay the interest on the premium notes on the 29th day of March, 1874, upon this state of facts? An answer to this inquiry necessarily requires a reference to several clauses in the policy.

In the first place, the policy recites that in consideration of the representations made in the application therefor, and of the premium in advance as therein stipulated, consisting of the annual cash premium of $179.55, to be paid at or before noon on or before the 29th day of March, and of an annual loan note, with interest, of $89.75, during the first ten years of the continuance of the policy, the company assured the life of Alfred Hull for the benefit of himself, in the amount of $5,000, for the term of his natural life. After a provision for the payment of the amount of the assurance when the policy matures, follow these clauses: "At each distribution of the surplus, after two years from the date hereof, a due proportion of such surplus on each and every year's business during the continuance of this policy will be returned to the said assured. And the said company further promises and agrees that, if default shall be made in the payment of any premium, it will

pay, as above agreed, as many tenth parts of the original sum assured as there shall have been complete annual premiums paid at the time of such default. But in order to secure such proportion of the policy, all premium notes must be taken up, or the interest thereon be paid annually in cash, on the date of the annual maturity of the premium, or within three months thereafter, until the notes are cancelled by returns of the surplus, or the whole policy will be forfeited, unless one or more annual payments have been made in full, by cash payment or by application of the dividend." Among the conditions upon which the policy was issued and accepted, was this: "3d. If the said premiums, or the interest upon any note given for the premiums, shall not be paid on or before the days above mentioned for the payment thereof, at the office of the company or to the agents when they produce receipts signed by the president or secretary, then, and in every such case, the company shall not be liable for the payment of the whole sum assured, but only for such part thereof as is expressly stipulated above, and the remainder shall cease and determine." On the policy was indorsed this statement, with other matters not material to be noticed: "At the third annual renewal, the dividend of the first year will be due, and on cash policies can be applied *as cash*, toward the payment of the third year's premiums, or if the party insured is, at the time, in good health, may be used for purchasing full paid additional nonforfeiting insurance, due and payable with this policy at death, or temporary insurance, expiring at the end of one year, and due and payable in case of death during the year; and on note policies will be applied first to pay the unpaid interest on loan notes, and then to the notes themselves. Loan notes are not assessable, and are to be paid only by the dividends, or by deduction from the policy when it matures, if any are then outstanding. * * * This policy is nonforfeitable. Each complete yearly payment secures its proportion of the policy. * * * If payments of premiums

Hull, Adm'r, vs. The Northwestern Mutual Life Insurance Company.

are at any time discontinued, this policy is full paid for an amount equal to as many proportionate parts of the original insurance as there have been complete annual premiums paid at the time of such default."

The loan note contains a promise by the assured to pay the amount therein named with seven per cent. interest, "which interest shall be paid annually or the policy be forfeited;" the note stating that it is given for part of the premium, and is to remain a lien upon the policy until it becomes due by limitation or by the death of the assured, when the note is to be deducted from the policy. Now, whether there is or is not some repugnancy in these various and different clauses and stipulations above referred to, is a question which we shall not stop to consider. It is sufficient to say that when they are all construed together as parts of the same transaction, as they obviously must be to ascertain the real meaning of the contract, we find no difficulty in affirming the judgment.

The scheme or plan of the policy, so far as ascertainable, is plainly opposed to an entire forfeiture on default to pay any premium falling due. For the company expressly agrees that if default shall be made in the payment of any premium, it will pay as many tenth parts of the original sum assured as there shall have been complete annual premiums paid at the time of such default. That this is a correct interpretation of the policy when the entire annual premium is paid in cash, is not seriously controverted. The question then is, What result follows when, as in this case, only a part of the annual premium is paid in cash, and a loan note given for the residue? The counsel for the company contend that then, by the terms of the policy, a failure to pay the interest on the notes on the date of the annual maturity of the premium, or within three months thereafter, works an entire forfeiture. And they rely in support of this position upon the doctrine of those cases which hold that the obligation of the company ceases upon failure to make payments as specified in the pol-

icy. The principal of these decisions is quite familiar, but the facts of this case render it inapplicable. In the first place, it will be seen that by the third condition above quoted, it is provided that if the premiums, or *the interest upon any note given for premiums*, shall not be paid on or before the days mentioned for the payment thereof, then the company is exonerated from the payment of the whole sum assured, and is only liable for such part thereof as is expressly stipulated. If there is any conflict or repugnancy between this condition and the prior clause, that in order to secure such proportion of the policy all premium notes must be taken up or the interest thereon be paid annually in cash on the date of the annual maturity of the premium, or within three months thereafter, the condition upon obvious principles should prevail. Forfeitures are only enforced when it appears that this is the plain intent and meaning of the contract; and the rule applies, that the words of an instrument shall be taken most strongly against the party employing them. But this is not all. The policy makes provision for the distribution of the surplus when earned. At the third annual renewal, the dividend of the first year was due, "*and on note policies will be applied, first, to pay the unpaid interest on loan notes, and then, to the notes themselves.*" Here is a clear and unqualified stipulation on the part of the company that the dividends should be appropriated on a note policy, first, to the unpaid interest on the loan notes, and then to the discharge of the principal of the notes themselves. And it was the manifest duty of the company to so apply the dividend due the insured March 29th, 1874, and prevent a forfeiture, if, indeed, by the terms of the policy, a forfeiture would result from a failure to pay the interest then due on the outstanding loan notes. Under these circumstances, it would be most unjust and inequitable to allow the company to prevail in its defense that the policy, as to the three-tenths of the original sum, became forfeited for nonpayment of interest. The premium notes outstanding are

made a lien upon the policy, and of course are to be deducted from the amount of the recovery. It will be seen that this is the provision made for their payment after the proper application of the dividends. For the insured in no event is bound to pay the principal of these notes; for the stipulation in reference to them is, that they " are to be paid only by dividends, or by deduction from the policy when it matures."

In answer to this view as to the rights and obligations of the parties, the counsel for the company claimed that the agreement to apply the dividends to the payment of interest on premium notes had no reference to a partially lapsed policy, but was obviously restricted to full policies. We see no warrant whatever for thus restricting the meaning of the clause. The language used is clear, unqualified and sufficiently comprehensive to include all note policies; and there is nothing in the context which to our minds evinces an intention to exclude policies partially lapsed. Nor is this construction of the clause inconsistent with or repugnant to any other provision relating to the same subject, which controls it. A still further objection is urged to the construction indicated, which is, that the contract requires the interest on outstanding notes to be paid in *cash;* and it is said that the uniform practice of the company has been to insist upon such payment in case of lapsed policies, the dividends being always applied to the discharge of the principal of the notes. Dividends due the insured are cash; and if the practice of the company has been to refuse to apply them in payment of interest on policies like this, it has simply violated its agreement. The money was in the possession of the company, and no excuse is given for its failure to make the appropriation. It is said that to entitle the insured to the dividend of $51.15, there must have been a policy in force when it became due; or in other words, that the insured must have been a policy holder. There is no occasion to controvert the correctness of this position. For if in any event default in the payment of the in-

terest on the outstanding notes would work a forfeiture of the policy, in the most favorable view for the company, the forfeiture would not be incurred until after the expiration of three months from the 29th of March, 1874. So that, in whatever aspect the case is considered, we see no valid ground for holding that all the rights of the insured under the policy had ceased and determined on account of default in the payment of the interest on the outstanding notes. Whether a different result would have followed had there not been a dividend due the insured sufficient to meet the amount of interest, is not a question before us. The case of the *St. Louis Mutual Life Ins. Co. v. Grigsby*, 10 Bush, 310, holds that even under such circumstances there will be no forfeiture of the policy; but it is not necessary to go to this extent in the case before us. The Kentucky case is criticised and disapproved in a recent decision made by the supreme court of Missouri in the case of *Russum v. St. Louis Mutual Life Ins. Co.* (unreported). The counsel for the defendant favored us with a copy of the opinion of the court in the latter case, as published in the St. Louis Republican, February 16, 1876. The court of Missouri think that the decision in the *Grigsby case* virtually makes a stipulation in respect to the payment of interest on the outstanding notes, which the parties to the contract declared to be of vital importance, of no significance whatever. Whether this criticism upon the decision in the *Grigsby case* is well founded, is a point we shall not consider. It is quite sufficient for our purpose to say that the court of Missouri clearly recognizes the principle which we have applied to the case at bar, and would doubtless have enforced it in the *Russum case*, had the facts of that case rendered it applicable. On the 2d of December, 1870, the time for making the third annual payment, the insured made default. A dividend was declared on the policy for that year, of $129.89. In 1871, no dividend was earned; and in July, 1872, the insured died. The court says: "When, on the 2d of Decem-

ber, 1870, he failed to pay the interest on his note for $580.11, then maturing, there was to his credit in the hands of the company, $129.89.  This sum the company was bound to apply first in such manner as to save the forfeiture; that is, to the payment in advance of the interest on this note.  The balance was applicable to the reduction of the principal of the note.  This left more than $480 of the principal of the note unpaid.  When, on the 2d of December, 1871, he failed to pay in advance the interest on this unpaid note, he incurred the forfeiture provided in the policy."  It is very evident from this extract, as well as from the reasoning in the opinion, that if a dividend had been earned for the year 1871, sufficient to discharge the interest on the outstanding note, the policy would have been held good as to two-tenths of the original sum insured.  For then, in that case as in this, there would have been no ground whatever for holding that the insured had failed in the performance of the contract on his part, and that the company was thereby released from all obligations under it.  The money would have been in the possession of the company to pay the interest when due; for the dividends earned belonged to the insured.  These is also a recent case in Iowa (*Ohde, Adm'r, etc., v. The Northwestern Mutual Life Ins. Co.*, 2 Central Law Journal, No. 36), which, so far as it has a bearing on the questions discussed above, supports our views.  But, in affirming this judgment, it is not necessary to come in conflict in any way with the doctrine of the cases which hold that where the parties have agreed that upon failure to pay any note or obligation given for a premium the policy shall become void, there a default works a forfeiture.  Here there was no default, it being the duty of the company to apply the dividends earned, first to pay the interest on the notes, and then to the discharge of the principal. This is the clear, distinct contract of the parties.

*By the Court.* — The judgment of the circuit court is affirmed.