HARTFORD LIVE STOCK INSURANCE COMPANY *v.*
EVERETT ET AL.

[No. 13,687. Filed January 8, 1930. Rehearing denied September 4, 1930. Transfer denied October 27, 1931.]

*Myers & Snerly, E. B. Price* and *O. O. Swails,* for appellant.

*Montgomery & Montgomery,* for appellees.

LOCKYEAR, J.—The appellees were the owners of a race horse named "Asaph," the life of which horse the

appellants insured under a policy which contained the following stipulation: "Nor shall this company be liable for the death of any animal which shall have been subject to an operation of any kind during the life of this policy without the written consent of the company for such operation to be performed endorsed thereon or attached hereto and signed by its General Agent at Hartford, Connecticut."

Without obtaining the consent of the company, the appellees, as is often done with race horses, had one of the front legs of this horse treated by a process known as "firing." Firing is performed by injecting medicine around the joint under the skin to kill the pain and then by means of an instrument that is heated hot and so constructed that it punches holes through the hide. This instrument is called a "cautery" and has an ether chamber in it and a hollow pipe that runs down and generates heat like a gasoline stove. It is arranged with sharp points somewhat larger than an ordinary shingle nail. The cautery points are heated to a red glow and are applied direct to the parts and should go through the skin, but not through the periosteum or covering of the bone. In the treatment of the horse in question, about 20 or 25 small holes were made on the one leg between one-eighth and one-fourth inches apart. The holes were made up and down the horse's leg, covering between one and two inches. This was done on January 5, 1926, by a veterinary surgeon, and it was decided to fire the other leg on the following day. As preparations were being made to fire the other leg of the horse, he was led out of the barn into the barn lot and reared back and upward on his hind legs, stepped on a small place in the lot which was covered with ice and fell, striking his head on the ice, from which fall he thereafter died.

It is the contention of the appellant herein that the process of firing above described is an operation, which, if done without the consent of the insurance company, avoids the policy.

There was a trial before a jury, which resulted in a verdict against the appellant in the sum of $1,160, upon which verdict, judgment for said amount was rendered.

The appellant filed a motion for a new trial on the grounds that the verdict of the jury is not sustained by sufficient evidence and is contrary to law; that the court erred in refusing to give, at the appellant's request, a peremptory instruction to render a verdict for the appellant; also that the court erred in permitting evidence to be introduced by appellees, over the objection and exception of appellants, to the effect that "firing" is not an operation.

The American Illustrated Medical Dictionary defines an "operation" to be any act performed with instruments or by the hands of a surgeon.

A provision of a policy for forfeiture on account of a promissory warranty or condition subsequent, being for the benefit of the company, is to be strictly construed, and a forfeiture will be enforced only when it appears that such is the plain intent and meaning of the contract. *Ferguson* v. *Union Mutual Life Ins. Co.* (1904), 187 Mass. 8, 72 N. E. 358; *Girard Life Ins. Co.* v. *Mutual Life Ins. Co.* (1881), 97 Pa. 15; *Hull, Admr.,* v. *Northwestern Mutual Life Ins. Co.* (1876), 39 Wis. 397; but where the contract is plain and its meaning clear, the court will not change its evident meaning or so construe it as thereby to make a new contract for the parties. *Firemen's Ins. Co.* v. *Temple Laundry Co.* (1924), 195 Ind. 194, 144 N. E. 838; *Union Life Ins. Co.* v. *Jameson* (1903), 31 Ind. App. 28, 67 N. E. 199.

The main questions involved in this appeal are discussed at length in the case of *Hartford Live Stock Ins. Co.* v. *McMillen* (1925), 9 Fed. (2d) 961, which was an appeal from the Northern District of Ohio and decided by the Circuit Court of Appeals of the United States. After describing the process of "firing" similar to that set out in this opinion, the court said: "Some of the veterinarians who testified thought the firing of the horse a major operation, while others did not consider it an operation at all, or at most a minor one. The facts as to what was done are beyond dispute, and we think it was for the court to determine whether it was within the inhibition against subjecting the animal to an 'operation of any kind.' The parties to an insurance policy have the right to contract as to risks the company will or will not assume, and if the facts are admitted it is the province of the court to determine whether they come within the clear and unambiguous terms of the policy, having in mind, as it is its duty to do, that the terms are ordinarily to be construed in their popular sense and according to common understanding. *Insurance Company* v. *County of Coos,* 151 U. S. 452, 14 S. Ct. 379, 38 L. Ed. 231.

"In its broadest meaning 'operation' would include the loading of a horse into a car, the unloading of one, or any act or series of acts by which some result is accomplished. But the usual and popular conception is restricted to its surgical sense; i. e., it is popularly understood to refer to a surgical operation, and clearly it was in that sense that it was used by the parties to this suit, in which it is an act or series of acts performed upon the body of a patient to produce a curative or remedial effect. The act performed on Wheaton was not one usually performed by any one but a veterinary surgeon. Certainly it required skill in surgery to puncture

the skin in many places and thus properly start a counter irritant that would neutralize or destroy an incipient exostosis. The policy did not prohibit the performance of a major operation without the company's consent or one that involved hazard, but the performance of an 'operation of any kind.' This clause, as every other in the policy, should, of course, receive a reasonable construction. In the opinion of a majority of the court, such construction includes the operation in question, and as to that part of the claim the trial court should have directed a verdict for the defendant."

We therefore conclude, in the instant case, manifest error appears, in that the court should have sustained the appellant's motion to direct a verdict in its favor, and that the verdict is contrary to law, for the reason that the process of firing is an "operation," and was performed without the consent of appellant having been first obtained.

Judgment reversed.