JEAN C. O'MEARA *v.* AMERICAN STATES INSURANCE COMPANY.

[No. 270A17. Filed April 8, 1971. Rehearing denied May 12, 1971.
Transfer denied August 3, 1971.]

*Robert J. Konopa, Crumpacker, May, Levy & Searer,* of counsel, of South Bend, for appellant.

*Franklin A. Morse, II, Thornburg, McGill, Deahl, Harman, Carey & Murray,* of counsel, of South Bend, for appellee.

ROBERTSON, J.—This case is from the St. Joseph Superior Court, in which the court denied the plaintiff-appellant's motion for summary judgment and granted the defendant-appellee's motion for summary judgment, thereby giving rise to this appeal.

The plaintiff-appellant and her husband are the owners of certain residential real estate which faces upon the St. Joseph River in South Bend, Indiana. Along that part of the property bordering the river, appellant maintained a rock wall which protruded three to four feet above the water's surface, and to an undisclosed depth below. In early May, 1967, appellant notified the appellee insurance company of the need to repair the wall based on the fact that increased power boat activity on the river and the resulting agitation of the water damaged the wall to the extent repairs were required. The insurance company denied liability under an exclusionary clause contained in the homeowners policy then in effect between the parties, stating losses not insured included:

"... (c)   caused by, resulting from, contributed to or aggravated by any of the following:

"... (1)   floods, surface waters, waves, tidal waves, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by the wind or not; ...

"... (3)   Water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls basement or other floors, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors; ...

"(g)   to fences, pavements, patios, swimming pools, foundations, retaining walls, bulkheads, piers, wharves or docks, and such losses caused by freezing, thawing, or by the pressure of weight of ice or water whether driven by wind or not ..."

Appellant proceeded to have the wall repaired at a cost of Ten Hundred Seventy-five Dollars ($1075), and after appellee again maintained it had no liability, suit was filed. The com-

plaint alleged, among other things, ownership of the real property, the insurance policy being in force, coverage of the damage, and compliance with conditions and requirements of the policy, the loss and damages to the wall. The insurance company filed its answer denying *inter alia,* coverage, the amount of damages, and that the insured had performed the conditions precedent. After completion of discovery, cross motions for summary judgment were filed, with the trial court overruling plaintiff-appellant's motion and sustaining the motion of defendant-appellee with a finding: "And now the court finds that the insurance policy of the defendant does not cover the alleged loss of the plaintiff".

The appellant's assignment of errors consist of the following:

1. The court erred in overruling appellant's motion for summary judgment.

2. The court erred in granting appellee's motion for summary judgment.

In view of the result we have reached we will consider only Specification #2 of appellant's assignment of error.

Since appellee chose to rely solely on Special Exclusion (c)(1) in its motion for summary judgment and memorandum in support thereof, the sole issue before this court is whether or not the loss sustained by appellant is excluded from coverage under Special Exclusion (c)(1).

Appellant has put forth the argument that Special Exclusion (c)(1) does not clearly encompass her loss, and must therefore be construed against the insurer and in favor of coverage. As appellant correctly states, it is a well established rule of law, and one which has been invoked by the courts in this state on numerous occasions, that where an insurance contract is ambiguous so as to be susceptible of more than one interpretation, the court will adopt the construction most favorable to the insured. *United States Fidelity and Guaranty Co.* v. *Baugh* (1970), 146 Ind. App. 583, 257 N.

E. 2d 699; *State Security Life Ins. Co.* v. *Kintner* (1962), 243 Ind. 331, 185 N. E. 2d 527; *Masonic Acc. Ins. Co.* v. *Jackson* (1929), 200 Ind. 472, 164 N. E. 628.

Accordingly the test to be applied in ascertaining the ambiguity, or lack thereof, of the insurance contract before this court, is whether or not it is susceptible of more than one interpretation. Furthermore, in order to constitute ambiguity so as to be susceptible of more than one interpretation, it must be shown that reasonably intelligent men on reading the insurance contract would honestly differ as to its meaning. *Masonic, supra.* This, however, does not mean that because controversy exists and a party asserts one interpretation, while the other denies it, that ambiguity has affirmatively been shown to exist. *American National Bank* v. *Service Life Ins. Co.* (1941), 120 F. 2d 579, cert. denied, 314 U. S. 654, 86 L. Ed. 524, 62 S. Ct. 104.

Appellant herein seeks to establish the ambiguity of her homeowners insurance policy by alleging the failure of Special Exclusion (c) (1) to clearly set out, and thereby exclude from appellee's liability, the loss which she sustained. It has been stipulated by the parties to this appeal that the damage to appellant's seawall was caused by the agitated water flowing from and behind passing motorboats. Indeed, Special Exclusion (c) (1) does not specifically exclude from coverage damage to a seawall caused by passing motorboats. However, it does exclude damage "caused by, resulting from, contributed to or aggravated by, . . . waves . . . whether driven by the wind or not. . . ."

Appellant contends that the agitated water flowing from and behind passing motorboats does not constitute waves, but rather is properly termed as the wake or wash of a vessel and hence is outside the scope of (c) (1). Appellee, on the other hand, has presented a barrage of dictionary definitions and literary phrases in support of its position that "wave" is the general word for any ridge, swell, or undulation, on the surface of water irrespective of its source of motivation. While

the merit of appellant's contention that the agitated water flowing from and behind motorboats is properly termed as the wash or wake is beyond repudiation, nevertheless it does not contradict appellee's position that "wave" is a generic term which is inclusive of wash or wake. Appellant has admitted that the two terms, "wash" and "waves" are "pretty much alike". Notwithstanding her own statement, appellant further seeks to distinguish the "wash" of a motorboat from "waves" by asserting that "waves" in their proper meaning are motivated by natural forces, whereas a "wash" or "wake" is driven by artificial forces. From the dictionary and literary authorities presented on this question, it is apparent that the motivating source of waves is not a factor critical to the definition of that term. While appellant is able to cite one authority which states that a wave[1] "is dependent on the friction between wind and water," her other authorities, as do appellee's, indicate that wind is not the only force which motivates waves. Appellant, in distinguishing artificial from natural forces, points out that aside from those caused by the friction between wind and water, waves may also be caused by the opposed gravitational pull of the sun and moon, and by earthquakes. Beyond the possible natural forces, appellee has maintained the position, and we must agree that there are also artificial forces which may cause waves. Certainly the undulation on the surface of water, caused by a man made subsurface explosion would properly be designated as waves driven by an artificial force.

We are constrained to give the words of an insurance policy their popular and ordinary meaning. *Stucker* v. *College Life Ins. Co.* (1965), 139 Ind. App. 422, 208 N. E. 2d 731, rehearing denied 211 N. E. 2d 320, cert denied; 386 U. S. 934; *Hartford Live Stock Ins. Co.* v. *Everett* (1930), 93 Ind. App. 238, 169 N. E. 473; *Imperial Fire Ins. Co.* v. *Coos County* (1894), 151 U. S. 452, 14 S. Ct. 379, 38 L. Ed. 231. In so doing, we are bound to hold that the term "waves"

---

1. Webster's Third International Dictionary, p. 2643.

given its popular and ordinary meaning is a generic term which encompasses both those waves which are motivated by natural forces and those motivated by artificial forces.

In *Stucker, supra,* this court was confronted with a somewhat analogous situation. In that case, it was held that the term "war" as used in an exclusionary provision of a life insurance policy was not ambiguous, and would encompass both declared and undeclared war.

Appellant has further sought to establish the existence of ambiguity in Special Exclusion (c) (1) by alleging that the phrase "all whether driven by wind or not" is reasonably susceptible of more than one interpretation, and that, in accordance with the aforementioned rules of construction, it should be given the interpretation most favorable to the insured. Appellant urges the interpretation that "all whether driven by wind or not" should be construed to mean all whether driven by wind or other natural forces. We are unable to find any such ambiguity so as to interpret this phrase in the manner appellant urges. The only reasonable interpretation of this phrase in light of the popular and ordinary meaning of the words employed, is that "all whether driven by wind or not" means all whether driven by wind or any other force. To construe this phrase otherwise would be to make a new contract which is not within the province of this court where ambiguity has not been shown to exist. This court, in *Bell et al.* v. *New York Life Ins. Co.* (1963), 134 Ind. App. 614, 190 N. E. 2d 432, at p. 435, stated:

> "It appears to us from examination of the certificate furnished to the appellants' decedent that the language therein is clear and unambiguous; to arrive at any other construction of the certificate would amount to the court making a new and different contract for the parties. It has been previously held by the Supreme Court of the State of Indiana that our courts can only enforce the terms of the contract as agreed upon and has no authority to make a new or different contract. *Metropolitan Life Insurance Company* v. *Winiger* (1938), 215 Ind. 120, 17 N. E. 2d 86; *Automobile Underwriters, Inc. et al.* v. *Camp, b/n/f et al.* (1940), 217

Ind. 328, 27 N. E. 2d 370, 28 N. E. 2d 68, 128 A. L. R. 1024; *Continental Life Ins. Co.* v. *Malott, Admx.* (1929), 89 Ind. App. 263, 166 N. E. 15."

We cannot state as a matter of law that ambiguity has been shown to exist in Special Exclusion (c) (1) of the policy in question. It must, therefore, be held that the trial court did not err in sustaining appellee's motion for summary judgment.

Finding no reversible error, the judgment of the trial court is affirmed.

Sullivan, P.J., Buchanan and Lowdermilk, JJ., concur.

NOTE.—Reported in 268 N. E. 2d 109.