**NORTHLAND INSURANCE COMPANY,**
Appellant (Plaintiff Below),

v.

**Richard Dale CRITES, Empire Fire and Marine Insurance Company, the Midwestern Indemnity Company, Everett A. Frost, Elzar Hargis, Northwestern National Insurance Group, Protective Insurance Company, and American States Insurance Companies, Appellees (Defendants Below).**

No. 1–580A139.

Court of Appeals of Indiana,
First District.

April 14, 1981.

James R. Fisher, Joseph A. Schenk, Ice, Miller, Donadio & Ryan, Indianapolis, for appellant.

John T. Lorenz, Peter G. Tamulonis, Kightlinger, Young, Gray & DeTrude, Indianapolis, for appellee, Empire Fire & Marine Ins. Co.

John T. Hume, III, Smith & Jones, Indianapolis, for appellee, Midwestern Indem. Co.

Rex P. Killian, Hall, Render & Killian, Indianapolis, for appellee, Protective Ins. Co.

ROBERTSON, Judge.

Northland Insurance Company (Northland) appeals from the trial court's decision in a declaratory judgment. Northland brought the action to determine which of four insurance companies is liable for damages resulting from a collision between a semi-tractor operated by Richard Crites (Crites) and various individuals. Each insurance company moved for summary judgment and requested judgments in its favor. The trial court denied Northland's motion and found that the company was liable for the damages. The trial court granted the motions of Empire Fire and Marine Company (Empire), The Midwestern Indemnity Company (Midwestern), and Protective Insurance Company (Protective), and found that they were not liable for the damages.

We affirm.

In 1976, Crites owned two semi-tractors and two trailers which were under a permanent equipment lease to Underwood Transfer Co., Inc. (Underwood). On September 27, 1976, Crites had a conversation with an agent for Hoosier Transport Incorporated (Hoosier), who sought Crites' services to haul a load of wire mesh from Kokomo to Terre Haute. After checking with Underwood's dispatcher and determining that he was not needed, Crites entered into an equipment lease agreement with Hoosier. This lease provides, in relevant part, that Hoosier was to lease one of Crites's tractors for a period of one year, with either party having the option to terminate the lease on ten days written notice, after the expiration of thirty days from the contract date. The lease specifies that it is for a series of trips to transport such property "as the lessee may require." The lease also requires that the "equipment shall . . . remain under the complete control of the lessee for the duration of this lease . . ."

Pursuant to the directions of Hoosier's agent, Crites took his tractor to Penn Dixie Steel Corporation in Kokomo. There, he picked up a trailer loaded with wire mesh and proceeded to make his delivery in Terre Haute. While returning from Terre Haute

to Kokomo, Crites was involved in the accident which gave rise to this case. At the time of the accident, Crites was still pulling the trailer which he picked up at Penn Dixie. This trailer was leased to Hoosier by a third party. Crites had not signed off the lease with Hoosier at the time of the accident. Crites explained that he was enroute to Hoosier's terminal to return the trailer and to sign off the lease at that time. This was in accordance with customary arrangements between Crites and Hoosier when he was using their trailer rather than his own. In such a situation, Hoosier received an additional fee for providing the trailer.

Crites also explained that he thought the lease with Hoosier was for only one trip. However, although Crites referred to the lease as a "trip lease," he did not think his obligations to Hoosier terminated upon delivery of the goods being transported, but rather when he returned the trailer to Hoosier's terminal and signed off the lease. His perceptions were based on prior dealings between the parties.

Northland provided liability coverage to Hoosier in certain circumstances. Empire provided liability coverage to Crites in certain other situations. Midwestern provided liability coverage to Underwood and Crites was a named insured in the policy. Protective also provided coverage to Underwood.

The following issues are presented for review: First, Northland argues the trial court erred in failing to construe the lease between Crites and Hoosier as a trip lease, without provisions for a return trip. Such a construction would place Crites within the scope of an exclusionary clause in Northland's policy. In a related argument, Northland contends the Public Service Commission's (PSC) regulations are not determinative of an insurer's liability and that, therefore, they are not liable because Crites had completed his delivery. Northland also argues the trial court erred by construing ambiguities in Empire's and Midwestern's policies in favor of the insurers rather than the insured.[1]

Northland's policy provided coverage to "additional insured" including "any person while using an owned automobile or a 'hired automobile.'" Crites was admittedly included in this provision. This provision was limited by the following endorsement:

The insurance with respect to any person or organization other than the named insured does not apply: ... (d) with respect to any hired automobile; to the owner or any lessee of such automobile, or to any agent or employee of such owner or lessee, if the accident occurs ... *(2) after arrival of the automobile at its destination under a single-trip contract which does not provide in writing for the return trip of the automobile ...* (Emphasis added.)

By interpreting the lease as a trip lease, without provisions for a return trip, Northland applies this exclusionary clause to Crites to exclude coverage.

We cannot agree with Northland's contention that the lease between Hoosier and Crites was a trip lease. The PSC's regulations, in effect at the time of the accident, provided for trip leasing in the following situations, none being applicable to the case at bar:

(c) Trip Lease of Equipment by and to Carriers. For purposes of this rule the term "trip lease of equipment" shall mean the augmentation of an authorized carrier's fleet by assuming the complete direction, control, responsibility and supervision over motor vehicle equipment it does not own in a one-way, one-trip movement. Equipment which may be trip leased by an authorized carrier is restricted to the following:

(1) Authorized carrier equipment which will be moved toward a service point of the authorized lessor carrier under the trip movement and will then be under use in the authorized service of the lessor carrier; or

---

1. No error has been raised on appeal with respect to Protective, Underwood's insurer. Any error in regard to Northland's assertion that the trial court erred by examining the overall insurance coverage available in this case, rather than construing each policy separately, has been waived pursuant to Ind.Rules of Procedure, Appellate Rule 8.3.

(2) Equipment otherwise used in the transportation of commodities exempt from economic regulation, which equipment is being operated back to its base of operation; or

(3) Equipment of a private carrier only if such equipment is owned by and used exclusively in the service of the private carrier and is being operated back to its base of operation.

Ind.Admin.Rules & Regs. (8–2–7–6)–2(c) (Burns Code Ed.)

Northland also contends that the PSC's regulations are not necessarily determinative of an insurer's liability, although they specify when a lessee carrier will be liable.[2] Northland contends that Crites had reached his destination under the lease when he made delivery in Terre Haute. Northland, again emphasizing its point of view that the lease was for only the single trip, argues that although Hoosier might be liable for Crites's actions because he had not signed off the lease, Northland is not liable because once Crites reached his "destination" he came within the scope of the policy's exclusionary clause.

■ In support of this argument Northland refers us to *Allstate Ins. Co. v. Liberty Mutual Ins. Co.* (3rd Cir. 1966) 368 F.2d 121, a case involving a declaratory action to determine which of two insurance companies, lessor's or lessee's, should bear primary liability for an accident. The lessee's insurance policy contained an exclusionary endorsement similar to the one in Northland's policy. The court held that, as between two insurance companies, the lessor's company should bear primary liability where the driver had made his delivery, although he had not signed off the lease. We note important factual distinctions between that case and the case at bar. In *Allstate Ins. Co.*, the lease was for a one way trip and

after the driver made his delivery, the lessor's obligations to the lessee were completed. Although the driver had not signed off the lease, the lessor had resumed complete control of the equipment. In the case before us, the fact that Hoosier's trailer was being used necessitated its return to Hoosier's terminal. Furthermore, Hoosier received additional income because its trailer was used. Therefore, when Crites made his delivery in Terre Haute, he had not reached his final destination, but instead had completed only a portion of his obligations to Hoosier and remained under their control. We find no error in the trial court's decision that Northland is liable for coverage.

We now turn to Northland's argument that the trial court erred by construing ambiguities in Empire's and Midwestern's policies in their favor rather than the insured's.

■ An "ambiguity" exists in an insurance contract when it is susceptible to more than one interpretation. In order to constitute such an ambiguity, it must be shown that reasonably intelligent men would honestly differ as to the contract's meaning. However, this does not mean an ambiguity exists simply because a controversy exists between parties, each favoring an interpretation contrary to the other's. *O'Meara v. American States Insurance Company,* (1971) 148 Ind.App. 563, 268 N.E.2d 109. When construing an insurance contract, we seek to ascertain and effectuate the intent of the parties to the contract. If there is no ambiguous language in a policy, this goal is accomplished by giving a policy's terms their plain, usual, ordinary, meaning. *Meridian Mutual Ins. Co. v. Gulf Ins. Co.,* (1977) Ind.App., 366 N.E.2d 190. We also must consider all of a policy's provisions in determining its meaning. *Taylor v. Ameri-*

---

**2.** Ind.Admin.Rules & Regs. (8–2–7–6)–2(b)(3), concerning equipment leases in general, and (8–2–7–6)–2(c)(7), concerning trip leases, specify that for the term of the lease in question:

The lessee motor carrier shall, ... be deemed the operator thereof and shall be responsible for the operation of the vehicle,

including equipment, physical condition, insurance coverage, registration thereof, markings, driver's qualifications and all other related matters to the same degree and extent as if said lessee motor carrier were the regular owner thereof.

*can Underwriters, Inc.*, (1976) Ind.App., 352 N.E.2d 86.

Midwestern's policy contained the following provisions:

> It is agreed that such insurance as is afforded by the policy shall apply only to the Leased Operator and for that vehicle described by a Certificate of Insurance attached to this policy. The Leased Operator must be under a permanent and valid lease agreement with the Trucking Firm and shall be considered a Named Insured of the policy of insurance subject to the "Cancellation or Termination" condition herein. The inclusion of more than one insured shall not operate to increase the limits of the Company's liability.

This provision was limited by these exclusions:

> Automobile Bodily Injury Liability and Automobile Property Damage Liability Coverage afforded under the terms and conditions of the policy does not apply:
>
> (a) While the vehicles covered by the Lease Agreement are being used to transport or haul merchandise, commodities, or *equipment* of any description whatsoever, either in the Leased Operator's business or *in the business of any other person, firm or organization.*
>
> (b) If the Leased Operator is operating his equipment under orders of the Trucking Firm or under any permit or certificate holder, including his own certificate or permit.
>
> (c) Unless the vehicles covered in the policy are operating "empty."
>
> (d) To injury or damage sustained by any person while in or upon, entering or alighting from the automobile. (Emphasis added.)

The trial court applied the above exclusionary clause in determining Midwestern was not liable. Northland argues the exclusionary clause is ambiguous because the term "equipment" in paragraph (a) is not clearly defined to include Hoosier's trailer which Crites was pulling; that the phrase "in the business of any other person, firm, or organization" in paragraph (a) does not include the return of the trailer to Hoosier; that the facts do not indicate Crites was under anyone's orders in regard to paragraph (c), and that paragraph (a) is to be read as modifying paragraphs (c) and (b) rather than as a separate situation when coverage is excluded.

■ Northland argues that although "equipment" is not defined in the policy, the policy's definition of "automobile" precludes interpreting "equipment" to include Hoosier's trailer:

> "Automobile" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery attached thereto).

Equipment, as used in the motor carrier business, is ordinarily defined to include trailers. The policy's provisions specify the insurance only applies to vehicles listed in the certificate of insurance, here Crites's tractor, but not Hoosier's trailer. Therefore, even if the definition of an automobile includes a tractor and trailer in some situations, reading the policy as a whole we perceive no ambiguity in applying paragraph (a). The policy does not apply if the insured vehicle, Crites's tractor, is transporting equipment, here a trailer, in the business of any person.

Likewise, we see no problem with the phrase "in the business of any other person, firm, or organization." Northland argues that Hoosier was not in the trailer delivery business, so Crites was not acting in Hoosier's business. This argument is strained. The return of the trailer was clearly related to Hoosier's activities as a carrier and Hoosier received income from the trailer's use. Because of this determination it is not necessary to discuss paragraph (b).

■ Additionally, in reading the exclusionary clause it is clear that paragraphs (a), (b), and (c) each specify separate criteria for determining when coverage will apply. Paragraph (c) therefore, is not a limi-

tation on the other two paragraphs. For these reasons, the trial court did not err in granting summary judgment in favor of Midwestern.

Northland makes similar arguments challenging the trial court's construction of Empire's policy. The policy provides that:

It is agreed that the insurance with respect to any automobile described herein or designated in the policy as subject to this endorsement applies, subject to the following additional provisions:

1. The insured does not cover as an insured any person or organization, or any agent, or employee or contractor thereof, *other than the named insured*, while engaged in the business of transporting property by automobile for others, or while enroute for such purpose at the request of any person or organization in such business. This paragraph does not apply with respect to owned automobiles registered or principally garaged in Wisconsin.

2. The insurance does not apply:

(a) While the automobile is used to carry property in any business;

(b) While the automobile is being used in the business of any person or organization to whom the automobile is rented.

. . . .

In consideration of the premium charged for the policy to which this endorsement is attached, it is understood and agreed that no coverage is extended to any person, firm or organization using the automobile, or legally responsible for the use of the automobile, pursuant to any · lease, contract of hire, bailment, rental agreement or any similar contract or agreement either written or oral, expressed or implied, the terms and provisions of the policy notwithstanding, *except that this limitation does not apply to the insured named in Item 1 of the declarations of this policy.* (Crites was an unnamed insured.)

Northland argues that Crites was not engaged in transporting property in Hoosier's business because the trailer was empty and should not by itself be construed as property. Northland also attempts to show by reference to the definition of "automobile" in the policy that the definition includes a trailer attached to a truck, therefore indicating a trailer is not considered to be a separate item when reading the coverage sections. We disagree. This policy, like Midwestern's, specifies the insurance only applies to vehicles listed in the insurance certificate. Thus "automobile" is limited to specified vehicles. Furthermore, there is nothing in the policy to indicate that "property" in the exclusionary clause was intended to exclude trailers. The fact that Hoosier was not engaged in the trailer delivery business in no way undermines the fact that Crites was acting for Hoosier in returning the trailer.

Northland also contends the policy's provisions conflicted with each other so that an ambiguity exists which should be construed against Empire. The policy's language is complex, but when read as a whole, the policy clearly limits coverage to Crites, and no other person or business, when the truck is not being used for business. The insurance policy's coverage is narrow, but this does not affect the policy's validity. The trial court did not err in granting summary judgment for Empire.

Judgment affirmed.

NEAL, P. J., and RATLIFF, J., concur.