James H. CARLILE d/b/a Carlile Trucking Company, Plaintiff-Appellant,

v.

UNITED FARM BUREAU MUTUAL INSURANCE COMPANY, Defendant-Appellee.

No. 1–980A259.

Court of Appeals of Indiana, First District.

May 5, 1981.

Opinion on Rehearing June 30, 1981. See 422 N.E.2d 399.

---

Charles T. Gleason, Charles S. Gleason, Gleason, Hay & Gleason, Indianapolis, for plaintiff-appellant.

Glenn E. Davis, Jr., Davis & Davis, Indianapolis, for defendant-appellee.

ROBERTSON, Judge.

James Carlile appeals the trial court's decision, which granted summary judgment in favor of United Farm Bureau Mutual Insurance Company (Farm Bureau) in a breach of contract action initiated by Carlile.

We affirm.

Carlile has raised several issues on appeal which may be categorized as follows: 1. Did the trial court err in granting summary judgment for Farm Bureau because the policy was ambiguous and should have been construed against the insurance company?; 2. Did the trial court err by failing to consider all the evidence, particularly depositions before the court?; 3. Was there a genuine issue of material fact precluding summary judgment?

Carlile was co-signor on a note for a 1973 GMC tractor which his son, Larry, used for commercial trucking. Carlile contracted for insurance on the vehicle with the defendant Farm Bureau renewing his policy in April, 1976. The policy provided a broad spectrum of coverage for liability, collision, property damage, and medical expenses. In particular, Carlile in his breach of contract complaint has sought recovery for the value of his truck, less $250.00 deductible, under the policy's collision provision, as well as consequential and punitive damages.

Carlile filed his complaint as a result of an accident on April 23, 1976 near Dale, Indiana, in which his son was killed and in which the insured's 1973 GMC tractor was damaged in excess of the $250.00 deductible amount. At the time of the accident, Larry was operating the tractor under a lease to Meat Dispatch, Inc. and was operating pursuant to an Indiana Public Service Commission Permit and an Interstate Commerce Commission permit. He was also operating more than 100 miles from Boswell, Indiana, and did so on a regular basis.

On June 4, 1976, Farm Bureau refused coverage on the basis that the use of the tractor under these circumstances violated a variety of restrictions in their policy. Farm Bureau cancelled the policy effective April 25, 1976, and returned the premium to Carlile.

The insurance policy contained the following exclusion:

EXCLUSIONS—Under Part III [physical damage to the automobile]

This policy does not apply under Part III:

(1) to any automobile; (a) while used as a public or livery conveyance, (b) while operating under any Interstate Commerce Commission or Public Service Commission permit or doing hauling requiring such permit, (c) which, if an owned automobile, is subject to any lease, rental, conditional sale, or purchase agreement not specifically described in the declarations, . . . .

The policy's entire coverage was subject to the following conditions defining coverage:

(62 to 65) Commercial truck excluding regular or frequent use beyond 100 miles from principal place of garaging, or into the city of Chicago, excluding those requiring any Interstate Commerce Com-

mission or Public Service Commission certificates or permits;

. . . .

### ENDORSEMENT NO. 30–A

In consideration of the premium for which this policy is written, it is hereby understood and agreed that exclusion (a) of the policy is amended to read: This policy does not apply under any of the coverages while the automobile: (1) is used as a Public or Livery Conveyance or, (2) is operating under any Interstate Commerce Commission or Public Service Commission permits or doing hauling requiring such permits except an Illinois Commerce Commission permit, (3) is or at any time, becomes subject to any lease, rental, conditional sale, or purchase agreement not specifically described in the declarations.

. . . .

13. CHANGES.

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy nor shall the terms of this policy be waived or changed except by successive declarations or by endorsements issued to form a part of this policy but the same shall not be binding on the policy until countersigned by a duly authorized officer or representative of the company.

16. DECLARATIONS.

By acceptance of this policy, the insured named in Item 1 of the declarations agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

Turning to Carlile's assertion that the policy was ambiguous, we are guided by the following criteria:

An "ambiguity" exists in an insurance contract when it is susceptible to more than one interpretation. In order to constitute such an ambiguity, it must be shown that reasonably intelligent men would honestly differ as to the contract's meaning. However, this does not mean an ambiguity exists simply because a controversy exists between parties, each favoring an interpretation contrary to the others. *O'Meara v. American States Insurance Company*, (1971) 148 Ind.App. 563, 268 N.E.2d 109. When construing an insurance contract, we seek to ascertain and effectuate the intent of the parties to the contract. If there is no ambiguous language in a policy, this goal is accomplished by giving a policy's terms their plain, usual, ordinary, meaning. *Meridian Mutual Ins. Co. v. Gulf Ins. Co.*, (1977) Ind.App., 366 N.E.2d 190. We also must consider all of a policy's provisions in determining its meaning. *Taylor v. American Underwriters, Inc.*, (1976) Ind. App., 352 N.E.2d 86.

*Northland Insurance Company v. Richard Dale Crites*, (1981) Ind.App., 419 N.E.2d 164.

We perceive no ambiguity in Farm Bureau's policy. In particular, we do not find an ambiguity in condition 62, which limits all coverage under the policy. The provision clearly excludes coverage when the insured vehicle is regularly used beyond 100 miles from the principal place of garaging, here Boswell, Indiana, and when the vehicle is operating pursuant to an I.C.C. or P.S.C. permit.

The other conditions in the policy reiterated the limit on coverage for use requiring P.S.C. or I.C.C. permits. Additionally, the exclusion for Part III, physical damage, and Endorsement No. 30–A clearly exclude coverage when the vehicle is operated pursuant to a lease not specified in the policy.

Carlile indicated in his deposition that he had read the policy and was aware of its provisions. He also indicated that he was aware that no changes in coverage occurred when the original policy was switched to the 1973 GMC tractor or when the policy

was renewed in April, 1976. Carlile was apparently confused by the language in condition 62, but this does not mean the policy is ambiguous, as a matter of law, nor that Farm Bureau must provide coverage.

██ Addressing Carlile's assertion that a genuine issue of material fact should have precluded summary judgment, we find no error. Summary judgment is of course only proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Rules of Procedure, Trial Rule 56(C); *Stuteville v. Downing*, (1979) Ind.App., 391 N.E.2d 629. A fact is "material" if it tends to facilitate resolution of any of the issues. The factual issue is "genuine" if it cannot be completely resolved by reference to the undisputed facts. *Stuteville v. Downing, supra.* Furthermore, even if the facts are undisputed, summary judgment is not appropriate when there is a disagreement as to the inferences to be drawn from such facts. *Smith v. P & B Corp.*, (1979) Ind. App., 386 N.E.2d 1232; *Yerkes v. Washington Mfg. Co.*, (1975) 163 Ind.App. 692, 326 N.E.2d 629. When entertaining a motion for summary judgment the evidence before the court should be construed in a light most favorable to the nonmoving party. *Tekulve v. Turner*, (1979) Ind.App., 391 N.E.2d 673; *Smith v. P & B Corp., supra.*

██ Applying these criteria, it is obvious that Larry Carlile was operating the insured vehicle under conditions and circumstances where coverage was not provided. There was no dispute about the factual setting of the accident. Therefore, summary judgment was proper and no genuine issue of material fact existed.

Finally, Carlile argues the trial court did not consider all the evidence before it. This argument was predicated on the idea that the trial court did not examine all the depositions before it. In responding to Carlile's original motion to correct errors, the trial court specifically stated it had examined the depositions and ordered them published.

We find no indication the trial court ignored evidence before it.

Judgment affirmed.

NEAL, P. J., and RATLIFF, J., concur.