SOUTHBEND ESCAN CORPORATION
f/k/a South Bend Range Corporation

v.

FEDERAL INSURANCE COMPANY,
Chubb Group of Insurance Companies,
Continental Casualty Company and
CNA.

No. S 84–112.

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 27, 1986.

Gerald A. Kamm, South Bend, Ind., for plaintiff.

Richard McDowell, Indianapolis, Ind., Edward N. Kalamaros, South Bend, Ind., Arthur P. Kalleres, Richard A. Smikle, Indianapolis, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

The Plaintiff, Southbend Escan Corporation f/k/a South Bend Range Corporation (Southbend), filed its complaint in this case for breach of an insurance contract and invoked this court's diversity jurisdiction under 28 U.S.C. § 1332. On October 15, 1985, Southbend filed a Motion for Partial Summary Judgment seeking judgment against two defendants, Federal Insurance Company (Federal) and Chubb Group of Insurance Companies (Chubb). Southbend alleged that Federal and Chubb breached an insurance contract by failing to defend or provide coverage and seeks damages for the amount of the settlement of the underlying lawsuit, costs of defending said lawsuit, interest on said amounts and punitive damages. Southbend's motion for summary judgment seeks judgment on all issues except punitive damages. On December 5, 1985, Federal and Chubb filed a Counter Motion for Summary Judgment. The parties have briefed the issues and the matter is ripe for ruling.

■ Summary judgment must be granted when the pleadings, answers to interrogatories, admissions on file and any affidavits demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.Proc. 56(e). In reviewing the pleadings and supporting documents, they must be viewed in the light most favorable to the non-moving part. *Trulson v. Trane Co.*, 738 F.2d 770 (7th Cir.1984); *Korf v. Ball State University*, 726 F.2d 1222, 1223 (7th Cir.1984). Further, when a case turns on a written document and there are cross motions for summary judgment, the construction of the contract is a judicial function. *See, e.g., B & R Farm Services v. Farm Bureau Mutual Ins. Co.*, 483 N.E.2d 1076 (Ind.1985).

The record discloses the following undisputed facts. On August 30, 1979 Brutoco Partners 97, a California limited partnership and Barranca-Garvey Associates, a California limited partnership filed a cross

complaint against Southbend and other defendants for breach of contract, breach of express warranty, breach of implied warranty, negligence and negligent misrepresentation and rescision in the Superior Court of the State of California. Southbend notified Federal and Chubb of the filing of the lawsuit. On December 18, 1979, Federal and Chubb agreed to assume Southbend's defense of that lawsuit under a full and complete reservation of rights under the policy. After reviewing the allegations in the cross complaint in light of the insurance policy, Federal and Chubb determined that the policy did not cover the claims of the cross complaint and so notified Southbend on February 5, 1980.

Southbend eventually settled the litigation with Brutoco Partners 97 and Barranca-Garvey Associates for Seventy-five Thousand Dollars ($75,000.00). Southbend then filed this case against Federal and Chubb alleging that Federal and Chubb breached the insurance contract by failing to defend and sought damages for the amount of the settlement plus attorney fees, interest and expenses incurred for travel and time of Southbend employees and punitive damages.

The comprehensive Liability Insurance contract in effect between Southbend, Federal and Chubb, being policy number MP 3502–38–64 contained the following pertinent provisions:

*Coverage:*

The company will pay on behalf of the insured all sums which the insured shall become obligated to pay as damages by reason of liability to which this insurance applies, imposed by law or assumed by the insured under any written contract, for bodily injury, property damage or personal injury caused by an occurrence and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury, property damage or personal injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient. The company shall not be obligated to pay claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

*Exclusions:*

This insurance does not apply [to]:

15. loss of use of tangible property which has not been physically injured or destroyed resulting from:

a. a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or

b. the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured;

16. property damage to the named insured's products arising out of such products or any part of such products;

17. property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

*Definitions:*

"Occurrence" means an event, including continuous or repeated exposure to conditions, which results in bodily injury, property damage, personal injury ...
"property damage" meaning

1. physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or

2. loss of use of tangible property which has not been physically injured or

destroyed provided such loss of use is caused by an occurrence during the policy period.

In its motion for partial summary judgment, Southbend only refers to and quotes Count IV of Brutoco's cross complaint, thus apparently relying on that count as the basis for coverage under the insurance policy. Count IV provides as follows:

As and for a fourth cause of action against cross defendants and each of them, cross-complainants allege:

23. Cross-complainants reallege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 7, inclusive, of the within cross-complaint.

24. Cross-complainants are informed and believe and on that basis allege that at the time the aforesaid sales agreement was entered into, cross-defendants GROCERS EQUIPMENT COMPANY and SOUTH BEND RANGE CORPORATION, knew that the equipment manufactured by cross-defendant SOUTH BEND RANGE CORPORATION would be used in THE CRUSHED GRAPE RESTAURANT, and that as the seller and manufacturer of such equipment, such cross-defendants owed to cross-complainants a duty of care to provide equipment which would be fit for its ordinary use in a commercial restaurant establishment.

25. Cross-complainants are informed and believe and on that basis allege that cross-defendants negligently manufactured, fabricated, inspected, shipped and delivered equipment to crosscomplainants in or around September, 1978. Such equipment was not fit for its ordinary use in a commercial restaurant establishment in that the valves on the Salamander, grill and other units would repeatedly freeze and could not be operated except with pliers or similar tools, the convection oven and other equipment did not work properly, and in general such equipment is of inferior quality and construction.

26. As a result of the negligence of cross-defendants GROCERS EQUIPMENT COMPANY and SOUTH BEND RANGE CORPORATION, cross-complainants will be required to replace such equipment which will be fit for use in a commercial restaurant. Cross-complainants are informed and believe and on that basis allege that the cost of securing such conforming equipment will be in excess of the contract price agreed upon by cross-defendant GROCERS EQUIPMENT COMPANY, and that cross-complainants will be damaged in an amount equal to such increased cost. Further, cross-complainants will incur incidental expenses for the removal of the defective equipment; for additional time and labor by the employees of cross-complainants in locating and contracting for such replacement equipment; for interruption to the restaurant business during the period of time that new equipment is being installed; for the cost of shipping and installation of such new equipment, and for other expenses and incidentals to secure such new equipment. As a result, cross-complainants will be damaged in a sum equal to such additional cost of purchasing new equipment and such incidental expenses, all in the sum of $100,000.00.

27. Cross-complainants are informed and believe and on that basis allege that cross-defendants GROCERS EQUIPMENT COMPANY and SOUTH BEND RANGE CORPORATION, knew or should have known, that properly functioning kitchen equipment is vital to the successful operation of any restaurant. As a result of the negligence of cross-defendants GROCERS EQUIPMENT COMPANY and SOUTH BEND RANGE CORPORATION, cross-complainants have been damaged in that the improperly operating equipment has resulted in increased labor costs in that the chefs and other employees of the restaurant were required to spend a greater period of time in preparing food; has resulted in delays in the preparation of food which results in patrons having to wait for long periods of time to be served which de-

creases the number of patrons which the restaurant is able to serve; and has resulted in a loss of goodwill of the restaurant due to the fact that patrons have on many occasions had to wait unreasonable period of time to be served. As a result of all of the above cross-complainants have been damaged, and are continuing to be damaged for the loss of such goodwill. Because of the continuing nature of the damages, cross-complainants presently are unable to determine the precise damage which will eventually be incurred to such goodwill. Cross-complainants are informed and believe, however, and on that basis allege, that the total damages for loss of goodwill at THE CRUSHED GRAPE RESTAURANT will be in the total sum of $500,000.00. Cross-complainants will seek leave of court to amend this cross-complaint to set forth the total damages for loss of goodwill, when the same has been ascertained.

An insurance policy is a contract between parties and in determining the liability coverage of a policy, the law of contract applies. *Cincinnati Ins. Co. v. Mallon,* 409 N.E.2d 1100, 1103 (Ind.App.1980); *American States Ins. Co. v. Aetna Life & Casualty Co.,* 177 Ind.App. 299, 379 N.E.2d 510 (1978). Thus, although special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and insureds, *see, e.g., Allstate Ins. Co. v. Boles,* 481 N.E.2d 1096, 1101 (Ind.1985); *Taylor v. American Underwriters, Inc.,* 170 Ind. App. 148, 352 N.E.2d 86 (1976), a court cannot rewrite an insurance contract by using such construction rules. *Cincinnati Ins. Co. v. Mallon, supra; O'Meara v. American States Ins. Co.,* 148 Ind.App. 563, 268 N.Ed.2d 109 (1971). Further, if an insurance contract is clear and unambiguous, the language therein must be given its plain meaning. *Allstate Ins. Co. v. Boles, supra; Cincinnati Ins. Co. v. Mallon, supra; Vernon Fire & Casualty Ins. Co. v. American Underwriters, Inc.,* 171 Ind.App. 309, 356 N.E.2d 693 (1976). However, where the language of an insurance contract is so ambiguous as to be susceptible of more than one interpretation, the court must adopt the construction most favorable to the insured. *Allstate Ins. Co. v. Neumann,* 435 N.E.2d 591, 593 (Ind. App.1982); *Barmet of Indiana, Inc. v. Security Ins. Group,* 425 N.E.2d 201, 202 (Ind.App.1981); *Utica Mutual Ins. Co. v. Ueding,* 175 Ind.App. 60, 370 N.E.2d 373, 376 (1977); *O'Meara v. American States Ins. Co.,* 268 N.E.2d at 110–111; *United States Fidelity and Guaranty Co. v. Baugh,* 146 Ind.App. 583, 257 N.E.2d 699 (1970).

To constitute an ambiguity so as to be susceptible of more than one interpretation, it must be shown that reasonably intelligent men upon reading the insurance contract would honestly differ as to its meaning. *See, e.g., Interstate Auction, Inc. v. Central National Ins. Group, Inc.,* 448 N.E.2d 1094, 1098 (Ind.App.1983); *Barmet of Indiana, Inc. v. Security Ins. Group,* 425 N.E.2d at 202; *Utica Mutual Ins. Co. v. Ueding,* 370 N.E.2d at 376. If no ambiguity exists, the court cannot consider any extrinsic evidence as to the meaning of the contract provisions and must merely apply the provisions without construing them. *See, e.g., Piskorowski v. Shell Oil Co.,* 403 N.E.2d 838, 846 (Ind. App.1980). Further, if a policy is unambiguous, it must be enforced according to its terms, even if it results in a limitation of the insurer's liability. *Interstate Auction, Inc. v. Central National Ins. Group, Inc.,* 448 N.E.2d at 1098; *American States Ins. Co. v. Aetna Life & Casualty Co.,* 177 Ind.App. 299, 379 N.E.2d 510 (1978). An insured has the burden of proving coverage under an insurance policy, *Allstate Ins. Co. v. Neumann,* 435 N.E.2d at 594, and if insurance is promised in general terms followed by specific exceptions, the insurance company has the burden of proving that a case falls within an exception. *Mutual Hospital Ins., Inc. v. Hagner,* 475 N.E.2d 32, 34 (Ind.App.1984).

Finally, in determining whether it has a duty to defend on behalf of an

insured, an insurance company may go beyond the face of a complaint and refuse to defend based upon the factual underpinnings of the claim. *Cincinnati Ins. Co. v. Mallon,* 409 N.E.2d at 1105; *United States Fidelity and Guaranty Co. v. Baugh, supra;* 7 C. Appleman, Insurance Law and Practice § 4683 (Burdal ed. 1979); *see also American States Ins. Co. v. Aetna Life & Casualty Co.,* 177 Ind.App. 299, 379 N.E.2d 510 (1978). The insurance company can properly refuse to defend when the underlying factual basis of the complaint, even is proved true, would not result in liability under the insurance policy. *Cincinnati Ins. Co. v. Mallon, supra; see* 7 C. Appleman, Insurance Law and Practice, *supra,* § 4683 at 50. This does not, however, relieve an insurance company of its duty to defend unfounded, false or fraudulent suits based upon risks it has insured since its duty to defend is still broader than its coverage liability. *Cincinnati, supra;* 14 Couch on Insurance §§ 51:44, 48 (2d ed. 1965). Thus, the duty to defend is determined by the nature of the claim and not its merits. *Cincinnati, supra* at 1105.

■ Under the law of Indiana as set forth above, this court finds that the relevant portions of the insurance policy at issue in this case are unambiguous. Accordingly, the court may not consider any extrinsic evidence, cannot consider any rules of construction nor construe the provisions contained in the insurance policy. Rather, this court must merely apply the provisions contained in the insurance policy to the undisputed facts of this case. *See Piskorowski v. Shell Oil Co.,* 403 N.E.2d at 846.

■ The coverage language of the policy provides that the insurance company "will pay on behalf of the insured all sums which the insured shall become obligated to pay as damages by reason of liability to which this insurance applies, ... for bodily injury, property damage or personal injury caused by an occurrence...." This court has carefully read Brutoco's cross complaint against Southbend. There are no allegations in the complaint with respect to

personal injury or bodily injury. Accordingly, coverage, if at all, under the policy must be for property damage caused by an occurrence.

The policy defines occurrence as an "event, including continuous or repeated exposure to conditions, which results in ... property damage...." Property damage is defined as (1) physical injury to or destruction of tangible property ... including the loss of use thereof ..., or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence.... There are no allegations in the complaint of destruction of tangible property. Further, there is no claim in Brutoco's complaint for physical injury to personal property. Brutoco's claim in Count IV is that Southbend negligently manufactured, fabricated, inspected, shipped and delivered equipment that was not fit for ordinary use in a commercial restaurant establishment. As an example of why the equipment was not fit for use, Brutoco alleged that the valves on the Salamander, grill and other units would repeatedly freeze and could only be operated with pliers and similar tools and that the other equipment did not work properly. Further, the alleged damages suffered by Brutoco do not include injuries to tangible property. Accordingly, even if Brutoco could have proven all the allegations in the complaint, there would be no coverage under the first prong of the property damage definition.

Further, Southbend cannot rely on the second prong of the definition of property damage to show coverage under the insurance policy. That provision only provides coverage for loss of use without physical injury only if such loss is caused by an occurrence. In this case, there was no "event" which caused the loss of use. The insured's products just did not function properly. However, even if the court would accept Southbend's argument that they have shown the loss in question is covered by the coverage language in the policy, this court must also consider the exclusions contained in the policy. *See*

*Cincinnati Ins. Co. v. Mallon,* 409 N.E.2d 1100 (Ind.App.1980).

Exclusions 16 and 17 would clearly exclude coverage for property damage to Southbend's products arising out of the products themselves or work performed by Southbend on its products. Brutoco's allegations are that the valves on part of Southbend's products would repeatedly "freeze" and could only be operated with pliers or other similar tools. The products malfunctioned. There are no allegations that anything caused them to malfunction other than they were not operating properly. Accordingly, to the extent that Brutoco's claims could be construed to be claims for property damage to Southbend's equipment, such claims are clearly excluded from coverage.

Likewise, Exclusion 15 would preclude any coverage for loss of use being claimed by Brutoco. Brutoco's claims are based on the failure of Southbend's products to be fit for use in its commercial restaurant establishment or, in other words, Southbend products failure to "meet the level of performance, quality, fitness or durability warranted or represented" by Southbend. Thus, Brutoco's claims fall directly within Exclusion 15. Further, the exception contained in Exclusion 15 does not apply. The exception provides that the "exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental injury to or destruction of the named insured's products...." There are no allegations in Brutoco's complaint of any "sudden and accidental injury" to Southbend's products. Southbend argues that the alleged "freezing" of the valves brings this case within the exception to Exclusion 15. The allegations in Brutoco's complaint are that the valves would "repeatedly freeze." Accordingly, it cannot be said that the freezing was "sudden and accidental" so as to come within the exception. *See Barmet of Indiana, Inc. v. Security Ins. Group,* 425 N.E.2d 201 (Ind. App.1981). Accordingly, Exclusion 15 applies.

For the foregoing reasons, the Counter Motion for Summary Judgment filed by Federal and Chubb is hereby GRANTED. Southbend's Motion for Partial Summary Judgment is hereby DENIED. SO ORDERED.

Enter January 27, 1986