**AUTO–OWNERS (MUTUAL) INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**L.P. CAVETT COMPANY and L.P. Cavett Company of Indiana, Inc., Defendants–Appellants.**

No. 88–2679.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1989.

Decided Aug. 15, 1989 *.

---

*United States Fidelity & Guaranty Co. v. American Fidelity & Casualty Co.,* 299 F.2d 215 (7th Cir.1962).

Charles T. Jennings, Donna H. Fisher, Jennings & Maas, Indianapolis, Ind., Dennis J. Dewey, Weyerbacher, Dewey & Weyerbacher, Newburgh, Ind., for plaintiff-appellee.

Michael C. Cook, Wooden, McLaughlin & Sterner, Indianapolis, Ind., Randolph A. Leerkamp, Carter & Leerkamp, Indianapolis, Ind., for defendants-appellants.

Before WOOD, Jr., CUDAHY, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Auto–Owners (Mutual) Insurance Company filed a declaratory judgment action in the district court, seeking a ruling that it had no duty to defend or indemnify L.P. Cavett Company and L.P. Cavett Company of Indiana, Inc. and their co-defendants in a personal injury action pending in an Indiana state court. The district court granted Auto–Owners' motion for summary judgment, relying in part upon existing precedent from this court. Based upon our reading of the insurance policies and our decision today to reconsider our prior interpretation of relevant Indiana insurance law, we reverse.

## I. BACKGROUND

On May 9, 1980, L.P. Cavett Company and L.P. Cavett Company of Indiana, Inc. (together hereinafter referred to as "Cavett") contracted with Rose Brothers Trucking, Inc. to provide hauling services and various materials on one of Cavett's central Indiana highway construction projects. The terms of the contract, contained in a preprinted form entitled "Proposal" provided by Rose Brothers to Cavett, required "[o]wner to carry fire, tornado and other necessary insurance." Auto–Owners provided the requisite coverage to Rose Brothers which forwarded a certificate of insurance to Cavett.

On September 18, 1980, one of Rose Brothers' employees, Lige B. Miles, while engaged in "horseplay," ran over and seriously injured another one of Rose Brothers' employees, Lige's uncle Lester Miles. Lester received compensation for his injuries under the worker's compensation provisions of the policies issued by Auto–Owners to Rose Brothers.

Lester subsequently filed a personal injury action in Indiana state court against Lige, Cavett, and the State of Indiana. In turn, Cavett filed a third-party complaint against Rose Brothers, claiming that Rose Brothers had agreed to provide insurance for Cavett and therefore was to indemnify Cavett against successful claims by Lester. The state court denied Cavett's motion for summary judgment, rejecting Cavett's claims that it did not owe Lester, as a matter of law, a duty to protect him from a co-employee of one of Cavett's subcontractors.

On February 19, 1986, Auto–Owners filed a declaratory judgment action in federal district court, based upon diversity, asking the court to declare that Auto–Owners had no duty to defend Lige, Cavett, or Rose Brothers in the state court action. On July 25, 1988, the district court granted Auto–Owners' motion for summary judgment with respect to Cavett, finding that, under the policies' exclusion provisions, Auto–Owners had no duty to defend or indemnify Cavett. The court also ruled upon summary judgment motions concerning the other defendants. However, we need not address those decisions because Cavett alone appeals the judgment entry.

## II. DISCUSSION

On appeal, Cavett challenges the district court's interpretation of the three relevant insurance policies issued by Auto–Owners

to Rose Brothers, a "Comprehensive Commercial Policy," a "Comprehensive Commercial Garage Liability Endorsement," and a "Commercial Umbrella Policy." Cavett asserts that the court correctly assumed that it qualified as an "insured," an assumption which Auto–Owners now contests. However, Cavett argues that the district court incorrectly concluded that the workman's compensation exclusion and employee exclusion provisions of those policies relieved Auto–Owners of any duty otherwise owed to Cavett as an "insured." We address these issues separately, but first set out the basic principles which will guide our analysis.

It is axiomatic that contracts for insurance are subject to the same rules of construction and interpretation as are other contracts. *See, e.g., Standard Mut. Ins. Co. v. Bailey*, 868 F.2d 893, 896 (7th Cir. 1989); *Southbend Escan Corp. v. Federal Ins. Co.*, 647 F.Supp. 962, 967 (N.D.Ind. 1986); *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind.1985); *State Sec. Ins. Co. v. Ottinger*, 487 N.E.2d 446, 447 (Ind.App.1985); *Anderson v. State Farm Mut. Auto. Ins. Co.*, 471 N.E.2d 1170, 1172 (Ind.App.1984). A court determining liability coverage may not rewrite an insurance contract by using special rules of construction, cannot ignore the contract's plain language, and cannot rewrite them to suit the circumstances of a particular case. *See, e.g., Southbend Escan Corp.*, 647 F.Supp. at 967; *Mullen v. Tucker*, 510 N.E.2d 711, 713 (Ind.App.1987); *Evans v. National Life Accident Ins. Co.*, 467 N.E.2d 1216, 1219 (Ind.App.1984); *Asbury v. Indiana Union Mut. Ins. Co.*, 441 N.E.2d 232, 236–37 (Ind.App.1982).

Unless the policy language is ambiguous, we must give the words their ordinary meaning to determine the intent of the parties. *Southbend Escan Corp.*, 647 F.Supp. at 966; *Asbury*, 441 N.E.2d at 236. A policy is not ambiguous merely because the parties advance competing and conflicting interpretations of the specific language. *Eli Lilly*, 482 N.E.2d at 470; *see also Hitt v. Githens*, 509 N.E.2d 210, 212 (Ind.App.1987); *Anderson*, 471 N.E.2d at 1172. An insurance provision is ambiguous only if reasonably intelligent people would differ as to the meaning of the provision without reference to outside influences. *Sur v. Glidden–Durkee*, 681 F.2d 490, 496 (7th Cir.1982); *Eli Lilly*, 482 N.E.2d at 470.

However, once an ambiguity is found, an insurance policy must be construed liberally in favor of the insured and in favor of finding coverage. *See, e.g., Hayes v. Allstate Ins. Co.*, 722 F.2d 1332, 1335 (7th Cir.1983); *Casey v. Transamerica Life Ins. & Annuity Co.*, 511 F.2d 577, 579 n. 4 (7th Cir.1975); *Southbend Escan Corp.*, 647 F.Supp. at 966; *Allstate Ins. Co. v. Boles*, 587 F.Supp. 807 (S.D.Ind.1982), *aff'd*, 776 F.2d 1049 (7th Cir.1985); *Eli Lilly*, 482 N.E.2d at 470. Courts should not exclude from coverage persons or risks which a policy may be reasonably construed to address. *National Mut. Ins. Co. v. Edward*, 517 N.E.2d 95, 100 (Ind.App.1987). With these general principles in mind, we now turn to the issues facing us.

## A. *L.P. Cavett's "Insured" Status*

■ The Comprehensive Commercial Policy and the Comprehensive Commercial Garage Liability Endorsement issued by Auto–Owners to Rose Brothers provide that "Insured" shall mean:

> not only the named insured, but also ... any person or organization legally responsible for the use [of any automobile owned or hired for use by the named insured], provided the actual use of the automobile is with the permission of the named insured....

The Commercial Umbrella Policy similarly states that "insured" shall mean:

> with respect to any automobile owned by the named insured for use by or on behalf of the named insured, any person while using such automobile and any person or organization legally responsible for the use thereof, provided its actual use is with the permission of the named insured,....

Cavett argues that it qualifies as an "insured" under this language because Lester has alleged that Cavett is "legally responsible for" Lige's operation of a Rose Broth-

ers vehicle which resulted in Lester's injuries. It concludes that it qualifies as an "insured" under these policies.

Auto–Owners contests Cavett's reading of the omnibus clause. "Under Indiana law, use of a vehicle means actively [sic] 'that assists in propelling or directing a vehicle to a place where it ceases to be employed.'" *Miller v. Loman*, 518 N.E.2d 486, 492 (Ind.App.1987) (quoting *Protective Ins. Co. v. Coca–Cola Bottling Co.*, 467 N.E.2d 786, 790 (Ind.App.1984)). Cavett asserts that the acts which allegedly resulted in Lester's injuries only involved Cavett's "acts of omission," rather than Cavett's actual operation of the vehicle which directly resulted in Lester's injuries and subsequent legal claims. Auto–Owners thus concludes that Cavett does not qualify as an "insured."

We do not believe that the plain language of the omnibus clause supports Auto–Owners' claims. The provision does not indicate that Cavett itself was required to "actually" or "actively" make physical use of Rose Brothers' vehicles to qualify as an "insured." Instead, the policy extends coverage to any "organization legally responsible for the use" of the covered vehicle. Thus, as long as Cavett had some measure of control over the vehicle which subjected it to potential liability for actions related to the actual operation of the vehicle, Cavett qualified as an "insured."[1] Stated differently, Cavett qualified as an

insured because someone or something ultimately under its control "actually or actively used" the vehicle. *Accord Transport Ins. Co. v. Protective Ins. Co.*, 696 F.Supp. 870, 874 (S.D.N.Y.1988) (court stating that "use" means "to bring into action or service, or to employ for a given purpose," *id.* (citing *Webster's Deluxe Unabridged Dictionary* 2012 (2d ed. 1979)), and also stating that "[i]t requires the exercise of control or *authority* over the insured vehicle," *id.* (citing *Protective Ins.*, 467 N.E.2d at 790)). We therefore hold that Magistrate Endsley correctly assumed that Cavett qualifies as an "insured" under the plain language of the policies issued by Auto–Owners in connection with the central Indiana highway construction project.[2]

## B. *The Exclusion Provisions*

Having found that Cavett qualifies as an "insured" under the omnibus clause of Auto–Owners' policies, we must determine whether Auto–Owners' policies nevertheless exclude from coverage the protection sought by Cavett. Each of Auto–Owners' policies exclude claims which "arise under" Indiana worker's compensation laws as well as claims involving "bodily injury to any employee of the insured." The court below found that Lester's personal injury claims fell within both of these exclusionary provisions and consequently denied

---

1. An issue exists as to the degree of control which Cavett ultimately exercised over Rose Brothers' use of the vehicle, an issue which the state court must decide to determine Cavett's liability for Lester's injuries. We decline to express any opinion on that issue and merely hold that the degree of control was sufficient to qualify Cavett as an "insured," especially because Lester's claims against Cavett are based upon a theory that Cavett "was legally responsible for" Lige's actions and apparently survived Cavett's initial motions for dismissal and summary judgment.

2. The Commercial Umbrella Policy alternatively defines an "insured" as:

    Any person or organization to whom or to which the named insured is obligated by virtue of a written contract to provide insurance such as afforded by this policy, but only with respect to operations performed by the named insured....

Cavett alleged below that this language also qualified it as an insured because Rose Brothers obligated itself by written contract to provide insurance. Rose Brothers disputes that it entered into such an agreement, the "Proposal" discussed above.

The district court never specifically addressed this issue, apparently believing that the exclusion provisions negated the need to discuss it. We note that if Cavett did not qualify as an "organization legally responsible for the use" of the Rose Brothers vehicle, Cavett nevertheless would qualify as an "insured" under the provision quoted above for purposes of coverage under the Commercial Umbrella Policy. We do not believe that any material dispute exists as to Rose Brothers' obligation to provide insurance under the "Proposal." However, we need not rest our decision upon this provision for the reasons stated above.

coverage to Cavett. We discuss these provisions separately.

### 1. The Worker's Compensation Law Exclusion

■ Auto–Owners' Comprehensive Commercial Policy and Comprehensive Commercial Garage Liability Endorsement provide that coverage for bodily injury liability and property damage liability shall not apply "to claims arising under any workman's compensation, employment compensation or disability benefits law, or under any similar law; ...." Further, Auto–Owners' Commercial Umbrella Policy states that it does not apply: "[t]o any obligation for which the insured or any carrier as his insurer may be held liable under any workman's compensation, unemployment compensation or disability benefits law, or under any similar law; ...." The court below found that Lester's claims against Cavett "arise under" Indiana's worker's compensation laws and held that Auto–Owners' policies thus specifically relieve it of any duty to defend or indemnify Cavett in the state court action.

We do not agree that the phrase "arising under" can be equated with the phrase "arising out of." The latter phrase is taken from the Indiana Worker's Compensation Act which provides that its provisions apply if an accident giving rise to an employee's claim for injuries "arise[s] out of, and in the course of, the employment." Ind.Code Ann. § 22–3–2–2 (West Supp. 1989). "The phrase 'arising out of' refers to the origin and cause of the injury; and 'in the course of' points to the time, place and circumstances under which the accident takes place." *Skinner v. Martin,* 455 N.E.2d 1168, 1170 (Ind.App.1983). The court below analyzed Lester's claims with respect to the statute and determined that they would fall within the scope of the worker's compensation statute. It conse-

quently concluded that Lester's claims "arose under" the statute.

We apply a narrower reading than the district court to the plain language of the exclusion provision. "An exclusion will be given effect only if it unmistakably brings the act or omission within its scope." *Evans,* 467 N.E.2d at 1219 (citing *Huntington Mut. Ins. Co. v. Walker,* 181 Ind.App. 618, 392 N.E.2d 1182 (1979)). It is true that Lester's injuries "arose out of" his employment and entitled him to assert claims against his "employer" under the act, claims which he in fact successfully made against Rose Brothers prior to bringing the state action against Cavett. However, the claims brought against Cavett do not fall within the scope of the act because Cavett clearly was not Lester's employer.[3] Instead, Lester's state court claims "arise under" Indiana tort law rather than any provision of the Worker's Compensation Act. We therefore hold that the "workman's compensation" exclusion provisions of Auto–Owners' policies do not relieve Auto–Owners of its duty to defend or indemnify Cavett in the state court action.

### 2. The Employee Exclusion

■ Auto–Owners' policies also provide that coverage for bodily injury liability and property damage liability shall not apply:

except as to liability assumed by the insured under a contract as defined herein, to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured other than domestic employment if benefits for such domestic employment are neither payable nor required to be provided under any workmen's compensation law; ....

Relying upon two decisions in which we interpreted similar provisions as first impression issues of Illinois and Indiana law, Magistrate Endsley found that Lester in fact should be considered Cavett's "employ-

---

3. The parties do not dispute that Rose Brothers employed Lester, not Cavett. Furthermore, because we have decided that prevailing Indiana insurance law no longer supports our position in *United States Fidelity & Guaranty Co. v. American Fidelity & Casualty Co.,* 299 F.2d 215, 217 (7th Cir.1962), and *Michigan Mut. Liability Co. v. Continental Casualty Co.,* 297 F.2d 208 (7th Cir.1961), we need not consider any claim that Cavett's status as an employer is ambiguous, either under the act or under Auto–Owners' policies.

ee," thereby relieving Auto–Owners of any duty to defend or indemnify Cavett.

In *Michigan Mut. Liability Co. v. Continental Casualty Co.*, 297 F.2d 208 (7th Cir.1961), we addressed a first impression issue of Illinois law and examined the effect of an insurance policy's "employee exclusion," a provision almost identical to the one found in each of Auto–Owners' policies. In *Michigan Mutual*, Harold Cinkel, an employee of Arthur Dixon Transfer Company, was injured during the course of his employment by an employee of J.F. Martin Cartage Company on Cartage's premises. Cinkel filed a workman's compensation claim with his employer's insurance carrier, Continental Casualty Insurance Company, which investigated and paid the claim. Cinkel then brought a personal injury action against Martin which tendered its defense to its own insurer, Michigan Mutual. However, Michigan Mutual attempted to tender Martin's defense to Dixon's carrier, again Continental Casualty, arguing that it was an "insured" under the policy issued by Continental Casualty to Dixon.

Continental Casualty acknowledged that Martin qualified as an insured under the policy. Nevertheless, it refused to accept the tender, asserting that the employee exclusion clause of its policy relieved it of any duties otherwise owed to Martin.

The policy's employee exclusion provision stated that the policy did not extend "to bodily injury to or sickness, disease or death of *any employee of the insured* while engaged in the employment of the insured...." *Id.* at 210. Martin argued that this exclusion did not apply because Cinkel was not its employee, but instead was an employee of Dixon, the "named insured." Continental Casualty contended that the phrase "any employee of the insured" actually meant "any employee of the [named] insured" and thus excluded from coverage any personal injury claim brought by a Dixon employee against any entity which might qualify as an "additional insured" under the policy's omnibus clause.

In resolving the eventual appeal of Continental Casualty's interpretation of the employee exclusion clause, we noted that there was a split of authority among jurisdictions as to the interpretation of employee exclusion clauses generally. We ultimately agreed with Continental Casualty's reading of the clause and found that "the weight of authority is that if the injured party is the employee of any person who is insured under the policy, the employee exclusion is applicable although he may not have been an employee of the person committing the tort." *Id.* at 211 (citing 50 A.L.R. 99).

Approximately one year later, when considering the identical first impression issue of Indiana law, we reaffirmed the holding of *Michigan Mutual* in *United States Fidelity & Guaranty Co. v. American Fidelity & Casualty Co.*, 299 F.2d 215, 217 (7th Cir.1962); *see also Ferrell v. State Auto. Ins. Ass'n of Indianapolis*, 303 F.2d 897, 898 (7th Cir.1962) (decided under Illinois law and reaffirming principles established in *Michigan Mutual* and *American Fidelity*).

Auto–Owners contends that we correctly decided those cases over twenty-five years ago and that we should not re-examine their precedential value today. However, we believe that it may be wise to reconsider *American Fidelity* in light of an important consideration: the decision addressed an issue of first impression in Indiana and, as the parties concede, no Indiana court has had an opportunity to address the issue since then.

We agree with Cavett that the state of Indiana insurance law has changed since 1962. As we discussed at the out-set, Indiana courts now regularly hold that courts should not look beyond the plain language of an insurance contract either to extend or limit coverage. Furthermore, even if the language were somehow ambiguous, which we doubt, Indiana courts have held that we are required to construe the policy in favor of the insured and in favor of finding coverage, not in favor of the party which drafted the insurance contract.

The clear intent of these now firmly established principles calls into question our earlier decisions to read words into the employee exclusion clauses to restrict the coverage available to an otherwise covered insured. Consequently, under prevailing Indiana law, we are not at liberty today to rewrite the plain language of the employee exclusion clauses or the definitions sections of the policies issued by Auto–Owners to Rose Brothers in connection with the highway construction project.

Without precedent from this court to hinder the reading of the plain language of the employee exclusion provisions of Auto–Owners' policies, we believe that Magistrate Endsley would have found that Cavett is entitled to coverage under those policies. No one claims that Lester was Cavett's "employee" at the time the accident occurred. Thus, the employee exclusion provision does not apply when a non-employee sues an "additional insured" for personal injuries suffered during the course of his employment even if those injuries possibly could be compensated as a workman's compensation claim. We therefore determine that this provision likewise does not relieve Auto–Owners of any duty otherwise owed to Cavett.

## III. CONCLUSION

We hold that L.P. Cavett Co. and L.P. Cavett Co. of Indiana, Inc. are "insureds" under the policies issued by Auto–Owners (Mutual) Insurance Company to Rose Brothers Trucking, Inc. We also hold that the "workman's compensation" exclusion and employee exclusion provisions of those policies do not relieve Auto–Owners of its duty to defend or indemnify the appellants in the state court action. We therefore REVERSE the district court's decision to enter summary judgment in favor of the appellee and ORDER that summary judgment be entered in favor of the appellants.