**Gary D. COLIP, Plaintiff–Appellant,**

v.

**Alan E. CLARE, one of the Underwriters at Lloyd's, London, Defendant–Appellee.**

**No. 93–1921.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1993.

Decided June 9, 1994.

Michael E. Brown (argued), Jeffrey A. Doty, Kightlinger & Gray, Indianapolis, IN, for plaintiff-appellant.

Stanley C. Fickle, Michael Rosiello (argued), Barnes & Thornburg, Indianapolis, IN, for defendant-appellee.

Before LAY,* COFFEY and ROVNER, Circuit Judges.

COFFEY, Circuit Judge.

Plaintiff Gary D. Colip appeals the grant of summary judgment in favor of Alan Edward Clare, an underwriter at Lloyds of London, an insurance carrier, whose syndicate provided Colip's Indianapolis law firm, Dillon & Cohen, with malpractice insurance. We affirm.

### ·BACKGROUND

In 1984, Dillon & Cohen, seeking to obtain legal malpractice liability insurance, contacted one of its local insurance agents, Ron Newmark of Affiliated Agencies, Inc. ("Affiliated"). Due to several recent claims against the Dillon & Cohen law firm, Affiliated was unable to procure malpractice insurance for the firm, so Affiliated sent Dillon & Cohen's application through a series of insurance brokers, until it reached Clare's syndicate at Lloyd's of London. For a yearly premium of $19,530, Clare's syndicate offered to provide the Dillon & Cohen law firm with $1 million in malpractice coverage for all malpractice claims based on acts or omissions occurring after the inception of the policy. The record discloses that after receiving the $19,530 price quote, Dillon & Cohen asked how much the premium would be "to [cover] prior acts as well." Clare responded that for an additional premium of $24,412.50 ($43,942.50 total), it offered "full back coverage" for malpractice claims based on acts or omissions occurring prior to the policy's inception.

Clare's two offers were circulated through the chain of brokers back to Associated and finally to Dillon & Cohen. Although Colip and the firm now claim that they intended to purchase the policy providing "full back coverage" for malpractice claims based on acts or omissions occurring prior to the policy's inception date, they ordered and paid for the

less expensive ($19,530) premium to Affiliated for coverage from August 15, 1984, to August 15, 1985. Consistent with the law firm's payment of the lower premium, Affiliated sent Dillon & Cohen a letter dated August 27, 1984, stating that the policy "is for $1,000,000 on a claims made (during the policy period) basis. *This means it will not pick up prior acts. I strongly advise you to obtain the tail coverage ... so that you will have that coverage.*" (Emphasis added.) There is no indication in the record that Dillon & Cohen subsequently purchased the tail coverage recommended by Affiliated. Affiliated later forwarded to Dillon & Cohen a "cover note," dated October 8, 1984, again confirming that as of August 15, 1984, Clare's syndicate had insured the law firm for $1 million for all claims based on conduct arising during the covered period, i.e. August 15, 1984, to August 15, 1985. The phrase "retroactive date inception" appeared on the cover note's face page under the heading "special conditions." As we will discuss hereafter, the phrase "retroactive date inception" was known in the insurance industry as meaning that the policy would not provide coverage for malpractice claims based on acts or omissions occurring before the inception date of the policy, August 15, 1984.

Dillon & Cohen renewed the policy the following year for another one-year term, and again received a cover note stating "retroactive date inception," i.e. that the policy would insure against all claims of malpractice based on acts or omissions occurring between the policy's inception date, August 15, 1984, and its new expiration date, August 15, 1986. On May 2, 1986, while the policy was in effect, one of the law firm's attorneys, Gary Colip, was sued for malpractice arising out of his 1983 preparation of allegedly false and misleading private placement memoranda in connection with the sale of limited partnerships in an oil drilling venture. Colip submitted an insurance claim to Clare, and Clare denied coverage, concluding that the act or acts forming the basis of the malpractice

---

* The Honorable Donald P. Lay, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

claim against Colip occurred prior to the date of the policy's inception.

Invoking diversity jurisdiction, Colip filed a declaratory judgment action against Clare seeking a determination that the insurance policy obliged Clare to provide coverage. Clare answered denying that Colip was covered and filed a motion for summary judgment. The district court granted Clare's summary judgment motion, determining that the policy did not provide coverage for malpractice claims based on acts or omissions occurring before August 15, 1984, and that the malpractice suit against Colip was based on acts committed prior to the policy's inception date, August 15, 1984. In response to Colip's argument that the meaning of the phrase "retroactive date inception" was unclear, the court noted that the meaning was well-known to the brokers who procured the insurance on the firm's behalf, as well as to Affiliated, and that as a legal matter the knowledge of the agent was imputed to the principal. The court also observed that Dillon & Cohen was given an opportunity to purchase the more expensive ($43,942.50) policy which would have given the law firm coverage for claims based on acts or omissions occurring prior to August 15, 1984, coverage it now wishes it had purchased. In addition, the court pointed out that Affiliated had advised Dillon & Cohen that the insurance that the firm selected "would not pick up prior acts" and that Affiliated had "strongly advise[d]" Dillon & Cohen "to obtain the tail coverage." Colip appeals.

### ISSUES

Colip raises the following issues: 1) whether the policy is ambiguous; 2) whether the malpractice claim against him is based on acts occurring before the policy's inception date; 3) whether summary judgment is appropriate in light of the fact that the court had not ruled on three of his discovery motions; and 4) whether the brokers who procured the insurance policy at issue were acting as his agents.

### DISCUSSION

#### Standard of Review

■ We recently stated the standard of review for summary judgments:

Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed. R.Civ.P. 56(c). This court reviews 'issues decided on summary judgment *de novo,* and ... resolve[s] all reasonable inferences in favor of the nonmoving party,' *Kennedy v. United States,* 965 F.2d 413, 417 (7th Cir.1992), '[h]owever, the non-moving party may not simply rest on his pleadings, but must demonstrate by specific evidence that there is a genuine issue of triable fact.' *Swanson v. Village of Lake in the Hills,* 962 F.2d 602, 603–04 (7th Cir. 1992).... Rule 56(c) requires entry of summary judgment if the nonmoving party fails to come forth with evidence to refute the allegations of the moving party in the motion for summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

*Hickey v. A.E. Staley Mfg.,* 995 F.2d 1385, 1388 (7th Cir.1993). As a federal court sitting in diversity, we apply state law—in this case, Indiana's—to resolve substantive questions and federal law to resolve procedural and evidentiary issues. *See Mercado v. Ahmed,* 974 F.2d 863, 866 (7th Cir.1992).

### I.

■ Noting that the policy does not define the term "retroactive date inception," Colip contends that the provisions of the policy are ambiguous as to whether acts or omissions occurring prior to August 15, 1984, are covered. Specifically, he points to the following language:

1. *Professional Liability and Claims Made Clause:* To pay on behalf of the Insured all sums in excess of the deductible amount stated in the Declarations which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD:

a) by reason of any act, error or omission in professional services rendered or that should have been rendered by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible, and arising out of the conduct of Insured's profession as a lawyer or notary public;

\* \* \* \* \* \*

PROVIDED ALWAYS THAT such act, error or omission ... happens:

aa) during the policy period, or

bb) prior to the policy period, provided that prior to the effective date of this policy:

1. the Insured did not give notice to any prior insurer of any such act, error [or] omission, and

2. the Insured did not have a basis to believe that the act, error or omission ... was a breach of professional duty or may result in a claim, and

3. there is no prior policy or policies which provide insurance for such liability or claim, whether or not the available limits of liability of such prior policy or policies are sufficient to pay any liability or claim or whether or not the deductible provisions and amount of such prior policy or policies are different from this policy.

Colip also argues that he intended to purchase insurance that provided coverage for malpractice claims based on acts committed prior to the policy's inception date.

We disagree with Colip's theory that the term "retroactive date inception" is ambiguous and that accordingly the policy is unclear as to whether claims based on acts or omissions occurring prior to August 15, 1984, are covered. Under Indiana law, language in a contract is deemed ambiguous "only if reasonably intelligent people could honestly find the contract's provisions susceptible to more than one interpretation." *INB Banking Co. v. Opportunity Options, Inc.*, 598 N.E.2d 580, 582 (Ind.App.1992), *trans. denied.* "[A]n ambiguity is not established simply because one party asserts an interpretation contrary to that asserted by the opposing party." *Peterson v. Universal Fire and Cas.*

*Ins. Co.*, 572 N.E.2d 1309, 1311 (Ind.App. 1991). Here, Clare submitted uncontradicted evidence that the term "retroactive date inception" was "a very common and well-understood term in a claims-made professional liability policy" and which "meant that the policy would not cover acts or omissions that occurred prior to the 'retroactive date', even if a claim based on those acts or omissions w[as] made during the policy period." *See* 2 *Couch Cyclopedia of Insurance Law*, § 15–60, 64 at 307, 314 (1984) (when "words have, by the usage of the trade, acquired a particular meaning, ... usage is admissible to explain them"). When deposed, even Dillon & Cohen's insurance agent, Ron Newmark of Affiliated, stated that the term "retroactive date inception" meant "that the coverage is effective with the date of inception" and that "the policy does not cover acts that occurred before the inception of the policy." *See also* William F. Campbell, *Basic Insurance Under Directors' and Officers' Liability Policies*, 454 Practising Law Institute 439 (May 1, 1988) ("Typically, but not always, the 'retroactive date' is the policy inception date of a new policy. In this event, all claims based on events before the policy effective date are excluded").

In light of the fact that Dillon & Cohen 1) ordered legal malpractice insurance and paid only for the less expensive premium for the period covering August 15, 1984, to August 15, 1985, 2) received a cover letter clearly stating that the policy had a retroactive date of inception, meaning that malpractice claims based on acts occurring prior to the inception date (August 15, 1984) were not covered, and 3) received from Affiliated a letter dated August 27, 1984, "strongly advis[ing]" that the firm "obtain tail coverage" because their policy "will not pick up prior acts," we are at a loss to understand how Colip can claim that it misunderstood the scope of the coverage or that the policy is ambiguous. *See Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir.1992) ("it is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them.... [a] party who agrees to terms in writing without understanding or

investigating those terms does so at his peril"). Moreover, we note that Dillon & Cohen, through their insurance agents, entered the Lloyds of London insurance market to procure insurance precisely because they were unable to get insurance through the usual channels in this country due to the recent malpractice claims that had been filed against them. Because the term "retroactive date inception" is clear and unambiguous and because the law firm and Colip were certainly on notice as to the limited coverage of the policy, we find no merit to the plaintiff's contention that there is a triable issue regarding whether the policy afforded coverage for malpractice claims based on acts or omissions occurring prior to the policy's inception date. If Colip and/or Dillon & Cohen received a policy from Affiliated with terms other than those intended, then Colip and/or Dillon & Cohen was obligated to immediately take the question of coverage up with Affiliated. We hold that the district judge's determination that the language in the policy was unambiguous in providing for a retroactive date of inception was proper, and that there was no coverage for any malpractice claim based on acts or omissions occurring prior to the date of the policy's inception, August 15, 1984.

## II.

■ Colip next argues that he was covered because the underlying malpractice claim against him was based on conduct occurring after the policy's inception date. Again, we disagree.

The record before us reveals that the malpractice claim against Colip is based on Colip's 1983 preparation of allegedly false and misleading private placement memoranda in connection with the sale of limited partnerships in an oil drilling venture. The complaint alleged that Colip violated Ind.Code 23–2–1–12, which makes it illegal to make fraudulent statements "in connection with the offer, sale, or purchase of any security[.]" Colip testified that in 1983 he drafted all the documents to be given to prospective partners and that the partnerships at issue were sold in 1983.

Even though Colip argues that he is covered under the Lloyd's policy because the underlying complaint also stated that in 1985 Colip visited the drilling operation in his capacity as attorney for some of the partners, it is clear that the acts or omissions upon which the underlying malpractice suit was based were committed prior to the date of his visit in 1985. Colip's argument is a smokescreen because the malpractice suit against him was based upon his preparation of private placement memoranda and the sale of the partnership interests in 1983, prior to the policy's inception date. Colip's argument that the court erred by examining the merits of the underlying lawsuit is unpersuasive; as the court in *Southbend Escan Corp. v. Federal Ins. Co.*, 647 F.Supp. 962 (N.D.Ind.1986) observed, under Indiana law, "in determining whether it has a duty to defend on behalf of an insured, an insurance company may go beyond the face of the complaint and refuse to defend based upon the factual underpinnings of the claim. The insurance company can properly refuse to defend when the underlying factual basis of the complaint, even i[f] true, would not result in liability under the insurance policy." *Id.* at 966–67 (citations omitted.) We agree with the district court's conclusion that Colip was not covered because even if he committed malpractice, he did so in 1983, before the inception of the policy.

## III.

■ Colip contends that the entry of summary judgment was inappropriate because when judgment was entered the court had not ruled on three of his motions to compel discovery. He speculates that the object of his discovery motions, Clare's claim file and the file of the attorney who investigated Colip's claim on behalf of Clare, may both contain "vital" information concerning the coverage issue.

Colip's argument fails for the simple reason that "[t]he interpretation of an insurance policy, as with other contracts, is primarily a question of law for the court." *Tate v. Secura Insurance*, 587 N.E.2d 665, 668 (Ind. 1992). As we have previously determined, the court concluded properly as a matter of

law that the plain meaning of the term "retroactive date inception" meant that the policy would not provide coverage for acts or omissions occurring prior to the commencement of the policy coverage as delineated in the very language of the instrument. The court did not err when it entered summary judgment in favor of Clare, holding that Colip was not covered.

## IV.

■ Finally, Colip disputes the court's determination that the brokers were acting as his agents and that accordingly their knowledge of the meaning of "retroactive date inception" was properly imputed to him. Once again, however, this argument is irrelevant inasmuch as we have determined as a matter of law that Clare was not obliged to defend or indemnify Colip. In any event, it is not disputed that Ron Newmark of Affiliated acted as Dillon & Cohen's agent and that Newmark testified that he knew that the term precluded coverage based on prior acts; thus, Newmark's knowledge was attributable to Colip and the law firm.

## CONCLUSION

The district court's determination that the policy at issue did not provide coverage for malpractice claims based on acts or omissions occurring prior to August 15, 1984, was proper. Since the malpractice claim against Colip was based on acts or omissions occurring before the policy's inception date, the court correctly held that there were no genuine issues of material fact and that Clare was entitled to judgment as a matter of law.

We affirm the entry of summary judgment in favor of Clare.